UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| KENNETH SIMMONS (12), | ) |
| RONALD ALFRED (18), | ) |
| JAMES ALFRED (19), | ) |
| FRANKLIN SEEGERS (20), | ) |
| DEON OLIVER (21), | ) |
| | ) |
| Defendants. | ) |
| | ) |

Criminal No. 00-157 (RCL)

FILED

MAY 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| KEITH MCGILL, | ) |
| | ) |
| Defendant. | ) |

Criminal No. 02-45 (RCL)

## MEMORANDUM OPINION

This matter comes before the Court on the post-trial motions of six defendants in the second trial group. Defendants filed a number of substantive motions, seeking a judgment of acquittal, a new trial or other relief; and a number of motions seeking leave to join or adopt the motions of co-defendants. As to the substantive motions, the following were filed: defendant James Alfred filed, on July 29, 2004, a Motion [1991] for Acquittal or Alternatively for a New Trial; defendant Keith McGill filed, on October 21, 2004, a Motion [2103/206] for a New Trial; defendant Ronald Alfred filed, on August 2, 2004, a Post-Trial Motion [1995] for Judgment of Acquittal, Motion to Dismiss and, in the Alternative, Motion for a New Trial; defendant Kenneth

Simmons filed, on August 2, 2004, a Motion [1994] for New Trial Based on the Cumulative Effect From Trial Errors; and defendant Franklin Seegers filed, on September 7, 2004, two motions: an Omnibus Motion [2032] for Judgment of Acquittal, or, in the Alternative, Motion for New Trial and Motion to Adopt Co-Defendants' Motions; and a Motion [2033] to Dismiss Counts Not Decided by Jury and Not Prosecuted by Government.

The following substantive motions by defendant Deon Oliver are under consideration: a Motion [1678] for Judgment of Acquittal, filed on February 2, 2004; a Motion [1850] for New Trial Based on Improper Substitution of Juror, filed on April 30, 2004; a Motion [1858] for Judgment of Acquittal *Non Obstante Verdicto* or Alternatively for a New Trial Based on the Rah-Rah Amendment to the Indictment, filed on May 13, 2004; a Motion [1870] for New Trial Based on Improper Dismissal of Dissenting Juror, filed on May 18, 2004; a Motion [1946] to Vacate Gun Conviction or Alternatively for a Hearing to Determine Whether Gun Destruction was in Bad Faith, filed on June 15, 2004; a Motion [1965] for New Trial Based on Improper Instruction After Jury Revealed Its Division During Deliberations, filed on June 22, 2004; a Motion [1975] for New Trial Based on Improper Admission of Other Crimes Evidence, filed on July 1, 2004; a Motion [1983] for New Trial Based on Denial of Pre-Trial and In-Trial Motions to Sever Defendants, filed on July 13, 2004; and a Motion [1989] for New Trial Based on the Cumulative Effect of Trial Errors, filed on July 27, 2004.

Defendants also filed a number of non-substantive motions [200, 217, 218, 221, 1857, 1873, 1875, 1987, 1994, 1997, 2009, 2014, 2015, 2032, 2043, 2046, 2113, 2133, 2267] to join or adopt the motions of co-defendants or for leave to late file. On December 30, 2005, the Government filed an Omnibus Opposition [2257/216] to Defendants' Motions for a New Trial,

to which four defendants filed a Reply: defendant James Alfred [2261] on January 19, 2006;

defendant Keith McGill [222] on February 17, 2006; defendant Ronald Alfred [2263] on January

20, 2006; defendant Franklin Seegers [2265] on January 20, 2006. Two defendants filed motions

to supplement or amend prior filings: on April 6, 2005, defendant Kenneth Simmons moved

[2168] to amend his Motion [1994] for a New Trial; and on January 27, 2006, defendant James

Alfred filed a supplement [2267] to his Reply [2261] to the Government's Opposition. Finally,

defendant Franklin Seegers moved [2264] on January 20, 2006 to Treat Post-Trial Motions as

Conceded.

Upon a thorough review of each party's filings, the applicable law and the entire record

herein, this Court has determined that all motions [200, 217, 218, 221, 1857, 1873, 1875, 1987,

1997, 2009, 2014, 2015, 2043, 2046, 2113, 2133, 2168, 2267] to join, adopt or amend or for

leave to late file shall be GRANTED; defendant Simmons' motion [1994] shall be GRANTED

as to his request to adopt co-defendants' motions and DENIED as to his request for a new trial;

defendant Seegers' motion [2032] shall be GRANTED as to his request to adopt co-defendants'

motions and DENIED as to his request for a new trial; defendant Seegers' motion [2033] to

dismiss counts and his motion [2264] to treat his motion to dismiss as conceded shall be

GRANTED as to his request that the counts be dismissed and DENIED as to his request that the

dismissal be with prejudice; all motions [206, 1678, 1850, 1858, 1870, 1965, 1975, 1983, 1989,

1991, 1995, 2032, 2103] for acquittal or for a new trial shall be DENIED; and defendant Oliver's

motion [1946] to vacate or for a hearing shall be DENIED.

## I. BACKGROUND

Five defendants – Deon Oliver, Franklin Seegers, Kenneth Simmons, James W. Alfred

3

and Ronald C. Alfred – were tried on a 158 count indictment. Specifically, defendants were tried

on count one, Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms of

More of Cocaine, Fifty Grams or More of Cocaine Base and One Kilogram or More of Heroin,

and Marijuana, and count three, Conspiracy to Participate in a Racketeer Influenced Corrupt

Organization. Some of the defendants were also tried on the following charges: continuing

criminal enterprise; first degree murder while armed and aiding and abetting; continuing criminal

enterprise murder and aiding and abetting; first degree felony murder while armed and aiding and

abetting; assault with intent to murder while armed and aiding and abetting; tampering with a

witness or informant by killing; violent crime in aid of racketeering activity and aiding and

abetting; use of interstate commerce facilities in the commission of murder-for-hire; distribution

of cocaine base and heroin and aiding and abetting; unlawful possession with intent to distribute

cocaine base, cocaine, and heroin, and aiding and abetting; illegal use of a firearm; and unlawful

use of a communication facility. The indictment also alleged that defendants murdered thirty-one

individuals and that they committed eleven attempted murders.

Defendant Keith McGill was indicted in a separate six-count superseding indictment for

offenses related to his participation in the same RICO and narcotics conspiracies on which the

other five defendants were indicted, and he was joined for trial with the other five defendants.

Specifically, defendant McGill was charged with conspiracy to distribute and possess with intent

to distribute crack cocaine, armed assault with intent to murder a witness, attempted murder of a

witness, RICO conspiracy, and attempted murder and use of a firearm in aid of the RICO

conspiracy.

All six defendants were tried from October 16, 2003 to March 31, 2004. After several

4

weeks of deliberation, during which a juror was dismissed and replaced by an alternate, the jury

convicted the defendants on a majority of the counts. Defendants subsequently filed the post-

trial motions presently under consideration.

## II. DISCUSSION

*I.    Legal Standard*

    *A.    Motion for Acquittal*

A motion for acquittal filed after the jury has returned a guilty verdict asks the Court to

set aside the verdict and enter a judgment of acquittal. FED. R. CRIM. P. 29. In reviewing a

motion for judgment of acquittal, the Court views all evidence in the light most favorable to the

Government, giving it the benefit of all reasonable inferences. *See United States v. Valdes,* 437

F.3d 1276, 1278 (D.C. Cir. 2006); *see also United States v. Fennell,* 53 F.3d 1296, 1298 (D.C.

Cir. 1995) (citing cases for the deferential review of jury verdicts); *United States v. Long,* 905

F.2d 1572 (D.C. Cir. 1990) (noting that "a jury is entitled draw a vast range of reasonable

inferences from evidence"). Accordingly, motions for judgment of acquittal are granted on the

basis of insufficient evidence only if the court concludes, as a matter of law, that no reasonable

juror could have convicted on the evidence presented. *See United States v. Weisz,* 718 F.2d 413,

438 (D.C. Cir. 1983) ("[A] judgment of acquittal is appropriate only when there is no evidence

upon which a reasonable juror might fairly conclude guilt beyond a reasonable doubt.") (citing

*United States v. Reese,* 561 F.2d 894, 898 (D.C. Cir. 1977)).

    *B.    Motion for New Trial*

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the

court may vacate any judgment and grant a new trial if the interest of justice so requires." FED.

R. CRIM. P. 33. Generally, any such motion must be filed within seven days of the verdict unless otherwise specified by the Court. FED. R. CRIM. P. 33(b)(2).

Whether to grant a motion for a new trial is "committed to the sound discretion of the trial judge," and is subject to reversal "only for abuse of discretion or misapplication of the law." *Reese*, 561 F.2d at 902. Defendant bears the burden of showing that a new trial would be in the "interest of justice." *Id.* Furthermore, even if defendant demonstrates that an error occurred, a new trial is not warranted unless defendant shows that it so influenced the jury that a substantial right of defendant was affected. *See* FED. R. CRIM. P. 52(a) (describing harmless error provision that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded"); *Kotteakos v. United States*, 328 U.S. 750, 756 (1946) (noting that the harmless error provision restates existing law that technical errors, defects or exceptions which do not affect the substantial rights of the parties are not grounds for reversal).

Having carefully considered defendants' arguments, this Court finds that defendants fail to carry their burden under either standard, and accordingly are entitled to neither judgments of acquittal nor new trials. No defendant has successfully demonstrated that any errors occurred, nor even if they had, that they affected any substantial right of defendant. Each motion will be discussed separately.

II.    *Defendant James Alfred's Motion for Acquittal or Alternatively for a New Trial* [1991]

A.    *Motion for Acquittal*

In his motion, defendant James Alfred argues that the jury's conviction on five counts in the indictment were insufficiently supported by the evidence. (J. Alfred's Mot. 2-18.) This Court shall address each of his arguments in turn.

6

1.    *Sufficiency of Evidence for the Narcotics Conspiracy Conviction*

Defendant James Alfred concedes that there was evidence that he had participated in

buying and selling drugs, but argues that it does not support a finding that he did so as a member

of the organization. (J. Alfred's Mot. 2-10; J. Alfred's Reply 1-5.)  Rather, defendant James

Alfred claims that it showed he was merely a friend, outside the "family" (J. Alfred's Mot. 5-6; J.

Alfred's Reply 3), hardly an "integral member" of the conspiracy (J. Alfred's Mot. 5), and thus

cannot be considered a part of it (*id.* at 6).  Moreover, even if the evidence establishes that he was

a "drug customer" of defendant Kevin Gray, defendant James Alfred maintains that a buyer-seller

relationship does not constitute a drug conspiracy.  (*Id.*; J. Alfred's Reply 3.)  Defendant James

Alfred also argues that the testimony of witnesses to drug transactions involving members of the

conspiracy failed to demonstrate that he actively participated as opposed to merely being present.

(J. Alfred's Mot. 2-5.)  Finally, he claims that the evidence failed to prove that his role, if any,

was that of a lieutenant, as had been alleged in the indictment.  (*Id.* at 6; J. Alfred's Reply 4.)

The Government maintains that there was ample evidence that defendant James Alfred

"actively participated in the drug conspiracy," including evidence of his participation in drug

transactions with members of the conspiracy as well as his participation in violent acts on behalf

of the conspiracy. (Govt.'s Omnibus Opp'n 41.)  The Government also asserts that the evidence

showed that defendant James Alfred was a lieutenant, under the common sense definition of that

term as someone occupying a mid-level position in an organization.  (*Id.* at 45.)

This Court finds that there was sufficient evidence for the jury to find defendant James

Alfred guilty of the narcotics conspiracy. The jury was presented with evidence that defendant

James Alfred had engaged in numerous drug transactions with persons, both inside and outside

the conspiracy, in which he either supplied or received varying amounts of drugs, including

heroin (*E.g.*, Trial Tr. 10/28/03 p.m. at 93-94, 102-03, 118) and powder and crack cocaine (*E.g.*,

Trial Tr. 10/21/03 p.m. at 51, 137, 146; Trial Tr. 10/28/03 p.m. at 120-23; Trial Tr. 11/4/03 p.m.

at 126-28; Trial Tr. 12/15/03 p.m. at 23-27). The fact that a witness described defendant James

Alfred as being outside the "family" does not itself mean that a reasonable jury could not have

credited the evidence that he was a member of the conspiracy. Such a finding could have been

based, for example, on the contrary testimony cited above or on an interpretation of "family" that

encompasses a narrower organization than the charged conspiracy. Consequently, this Court

finds that there was sufficient evidence on which a reasonable jury could have found defendant

James Alfred guilty beyond a reasonable doubt of the narcotics conspiracy. Defendant James

Alfred's motion based on sufficiency of evidence as to this conviction shall be DENIED.

> 2. *Sufficiency of Evidence for Convictions Related to Murder of Joseph*
> *Thomas*

Defendant James Alfred argues that no reasonable juror could have found him guilty of

the murder because his participation was "minuscule." (J. Alfred's Mot. 11.) He contends that

the testimony introduced at trial was insufficient either to place him at the scene of the murder or

to impute a motive. (*Id.* at 11-13; J. Alfred's Reply 5-7, 9.) The only witness who testified that

defendant James Alfred intended to harm the victim, defendant argues, was incredible and

uncorroborated. (J. Alfred's Mot. 12-13.) The Government responds that, given that defendant

James Alfred's motivation for the murder was personal, it is not surprising that some witnesses

did not know of his intentions. (Govt.'s Omnibus Opp'n 46.) Moreover, evidence was presented

that several defendants might have sought the victim's death in retaliation for an act by one of his

gang members. (*Id.* at 46-47.) The Government also points to testimony that implicated defendant James Alfred in soliciting, facilitating and celebrating the murder. (*Id.*)

This Court finds that there was sufficient evidence for a reasonable jury to have convicted defendant James Alfred of the charges of first degree murder while armed and continuing criminal enterprise murder of Joseph Thomas. The jury heard testimony that defendant James Alfred had a motive to retaliate against Thomas. (Trial Tr. 10/29/03 p.m. at 24.) Additionally, other testimony was received that defendant James Alfred likely shared the motive of his brother, defendant Ronald Alfred, to kill Thomas for reasons related to the rivalry between their respective gangs. (Trial Tr. 11/4/03 p.m. at 130-31.) This evidence was reinforced by other testimony that defendant James Alfred actively facilitated the murder of Thomas, by helping the group locate the victim (Trial Tr. 10/21/03 p.m. at 33), and by testimony that defendant James Alfred participated in the celebration following Thomas' murder (Trial Tr. 10/21/03 p.m. at 45-48; Trial Tr. 1/9/04 p.m. at 90-91). Finally, a witness testified that defendant James Alfred confirmed that he had ordered the murder. (Trial Tr. 10/29/03 p.m. at 24-25.)

Convictions for first degree murder while armed and continuing criminal enterprise murder may be based on evidence that he solicited and facilitated the murder. *See Collazo v. United States*, 196 F.2d 573, 580 (D.C. Cir. 1952). Specifically, defendant James Alfred's liability for the counts related to Thomas' murder were based on aiding and abetting, which requires the Government to demonstrate that (1) an offense was committed by someone; (2) the accused assisted or participated in its commission; and (3) the participation was with guilty knowledge. *See, e.g., Blango v. United States*, 335 A.2d 230, 235 (D.C. 1975); D.C. Code § 22-105. Here, the testimony that defendant James Alfred had solicited the murder and assisted in

9

locating the victim, all with knowledge of the plan to murder him, provided sufficient basis for the convictions. Accordingly, defendant James Alfred's motion based on sufficiency of evidence as to these convictions shall be DENIED.

3.     *Sufficiency of Evidence for Conspiracy to Murder Carlos Cardoza*

Defendant James Alfred argues that there was insufficient evidence for the jury to convict him of conspiracy to commit the murder of Carlos Cardoza. (J. Alfred's Mot. 13-15; J. Alfred's Reply 7-9.) He claims that there was simply no connection between himself and the murder. (J. Alfred's Mot. 13.) The Government argues that, similar to the counts relating to the murder of Joseph Thomas, defendant James Alfred could reasonably be found guilty of conspiracy to commit murder of Carlos Cardoza because he helped search for the victim while he was aware of the intention to kill him. (Govt.'s Omnibus Opp'n 49-50.)

This Court finds that there was sufficient evidence for a reasonable jury to convict defendant James Alfred of the charge of conspiracy to murder Carlos Cardoza. The jury heard testimony that defendant James Alfred helped search for Carlos Cardoza (Trial Tr. 10/21/03 p.m. at 154-56) when he knew that the reason other members of the conspiracy were seeking him was in order to kill him. (Trial Tr. 10/21/03 p.m. at 138-42, 147, 154.) This testimony formed a basis on which the jury reasonably could conclude he was guilty of aiding and abetting the murder, which is sufficient to support his conviction on this count. *See Collazo*, 196 F.2d at 580. Accordingly, defendant James Alfred's motion based on sufficiency of evidence as to this conviction shall be DENIED.

4.     *Sufficiency of Evidence for the RICO Conspiracy Conviction*

Defendant James Alfred argues that, since the jury could not reasonably have convicted

10

him of the narcotics conspiracy and the counts related to the two murders, they could not

reasonably have convicted him of the RICO conspiracy based on those acts. (J. Alfred's Mot.

16-17; J. Alfred's Reply 10-11.) He maintains that his role in the organization did not rise to the

level of director, supervisor, manager or one who controlled the activities of the organization. (J.

Alfred's Mot. 16-17; J. Alfred's Reply 10-11.) The Government's position is, first, that the

jury's convictions on the underlying counts were proper and thus that the RICO conviction was

also proper, and second, that culpability under the RICO statute does not require a high-level

role. (Govt.'s Omnibus Opp'n 51-52.)

This Court finds that there was sufficient evidence for a reasonable jury to have convicted

defendant James Alfred of the charge of RICO conspiracy. Both defendant James Alfred and the

Government rely on *Reves v. Ernst & Young*, 507 U.S. 170 (1993), in discussing the role a

defendant must have occupied to be convicted for RICO conspiracy, which states that to be

convicted under the relevant section of RICO, one must have been involved in the "operation or

management" of the enterprise. *Id.* at 185. The jury was presented with evidence of defendant

James Alfred's participation in two murders, *see supra* Parts II.A.2-3, and in wholesale drug

trafficking, *see supra* Part II.A.1. The evidence of his conduct in those offenses, moreover,

showed that he was in a position of directing others to act – such as the evidence that he ordered

that Thomas be killed (Trial Tr. 10/29/03 p.m. at 24-25) – or otherwise managing the work of

others in the enterprise, such as the evidence that he trafficked in wholesale quantities of drugs

(Trial Tr. 10/22/03 p.m. at 40-57; Trial Tr. 10/28/03 p.m. at 93-94, 120-24). On the basis of that

evidence, the jury reasonably could conclude that defendant James Alfred's conduct in the

conspiracy reached the level of "operation or management" and accordingly that the evidence

11

was sufficient for conviction on the RICO conspiracy count. Defendant James Alfred's motion

on this basis shall be DENIED.

> 5.    *Sufficiency of Evidence for the Counts Relating to Unlawful Use of a*
>
> *Telephone*

Defendant James Alfred argues that his convictions of unlawful use of telephone to

facilitate a drug trafficking offense were insufficiently supported by the evidence. (J. Alfred's

Mot. 17; J. Alfred's Reply 11-12.) He argues that, since the specific calls could not have

facilitated the commission of a drug offense, they cannot be the basis of a conviction for

unlawful use of a telephone to facilitate the same. (J. Alfred's Mot. 17.) The Government

contends that defendant James Alfred's claim must fail because the statute is violated when a

defendant participates in telephone calls to facilitate a conspiracy. (Govt.'s Omnibus Opp'n 53-

54.)

This Court finds defendant James Alfred's claim to be without merit. The statute under

which he was charged, 21 U.S.C. § 843(b), is violated when a defendant uses a communications

facility to facilitate a drug trafficking offense. While defendant James Alfred is correct that a

conviction under § 843(b) cannot stand unless the Government proves the commission of the

underlying offense, *see United States v. Iennaco*, 893 F.2d 394, 396 (D.C. Cir. 1990), this Circuit

has noted that the underlying offense need not be a specific drug transaction. Rather, as is the

case here, it may be a conspiracy. *See id.* at 397 (citing *United States v. Thomas*, 586 F.2d 123,

130-31 (9th Cir. 1978) for the proposition that government must prove commission of underlying

felony and holding that such felony can be a conspiracy). As this Court has already found that

the jury was presented with sufficient evidence on which it reasonably could base a conviction

for the narcotics and RICO conspiracies, there was sufficient evidence for the underlying offense. The jury could reasonably find defendant James Alfred guilty on the counts relating to unlawful use of a telephone to facilitate a drug trafficking offense. His motion based on sufficiency of evidence for these convictions shall be DENIED.

      *B.    Motion for New Trial*

Defendant James Alfred also moves for a new trial based on the Court's denial of his pre-trial motion *in limine* to exclude evidence relating to another murder. (J. Alfred's Mot. 18.) He argues that the Court's admission of the evidence was error because the probative value of the evidence was far outweighed by its prejudicial effect. (*Id.* at 18-19; J. Alfred's Reply 13.) The Government believes that the evidence was properly admitted to prove the introduction of defendant James Alfred and his brother Ronald Alfred into the conspiracy. This Court previously held that the evidence was admissible as "inextricably intertwined" with the charged conspiracy, and as relevant on the question of James Alfred's and Ronald Alfred's entrance into the conspiracy. Defendant James Alfred presents no new arguments why this Court should revisit its decision, and the Court declines to do so. As a result, his motion for a new trial shall be DENIED.

*III.    Defendant Kenneth Simmons' Motion for New Trial Based on the Cumulative Effect From Trial Errors* [1994]

Defendant Simmons moves this Court to grant a new trial based on the cumulative effect of four purported errors, and also moves to join several motions of his co-defendants. He contends first, that certain evidence should not have been admitted against him (Simmons' Mot. 2-6); second, that Steven Graham should not have been allowed to testify (*id.* at 6-10); third, that

13

he should have been severed from defendant Oliver (*id.* at 10-14); and fourth, that the Government failed to prove the existence of a RICO conspiracy (*id.* at 14-24). This Court shall consider each in turn.

>    A.    *Admission of Search Warrant and Wiretap Evidence*

Defendant Simmons maintains that the Court should not have allowed the Government to introduce evidence resulting from a 1996 search warrant or recordings of several wiretap calls because it had not been provided to defendant Simmons in a timely manner. (*Id.* at 2-6.) He states that his trial strategy was disrupted by both the admission of the unanticipated evidence, and by the Government's failure to produce some of the documentary evidence seized during execution of the search warrant. (*Id.* at 4-6.) The combination of these factors, he argues, resulted in unfair prejudice to defendant Simmons. (*Id.* at 6.)

The Government contends that defendant Simmons' claim must fail because, since it was not presented to the jury until many weeks after it had been disclosed to defendant, he had plenty of time to prepare to defend on the evidence. (Govt.'s Omnibus Opp'n 4-6.) The Government also argues that defendant Simmons' claims lack merit because he has failed to show how he was unfairly prejudiced by the late disclosure (*Id.* at 4, 7-11.)

This Court finds that neither the timing of the discovery relating to the evidence at issue nor the unavailability of some of the evidence seized during the search warrant entitles defendant Simmons to a new trial. This Court first notes that exclusion and in-trial severance are both extraordinary measures, not generally granted without a showing that unfair prejudice is likely to occur. *See, e.g., United States v. Gray*, 173 F. Supp. 2d 1, 7 (D.D.C. 2001) (Lamberth, J.) (citing cases that refer to the remedy of severance as "drastic," "extreme" and "intrusive"). Here,

defendant Simmons fails to demonstrate that he suffered unfair prejudice from the evidence being admitted. He argues that, once the Government introduced physical and wiretap evidence implicating him, he could no longer rely exclusively on a trial strategy of discrediting cooperating witnesses. This Court finds, however, that having to reevaluate trial strategy in light of new evidence is not itself the kind of disadvantage that warrants a new trial. As long as he was given sufficient time to prepare a defense, it is immaterial what effect the newly disclosed evidence had on his plans.

When possible, the Government is required to disclose wiretap evidence at least ten days before trial begins. *See* 18 U.S.C. § 2518(9). Here, the wiretap evidence against defendant Simmons was provided in stages: several weeks before trial, the Government notified him generally that there was wiretap evidence that had recently been discovered; and within 15 days of the beginning of jury selection, defendants were provided transcripts, affidavits, and copies of the wiretap calls. (Trial Tr. 10/14/03 p.m. at 56-58.) Furthermore, the Government indicated that it would not refer to the wiretap calls in its opening, and another month passed before the evidence was presented to the jury.

In light of the foregoing, this Court finds that it was not error to deny defendant Simmons' motion to exclude the evidence or for severance, and that he was not prejudiced by the delay in disclosure of the wiretap evidence. It is within this Court's discretion, if it finds that defendant will not be prejudiced, to permit an exception to the ten-day rule set forth in § 2518(9). In this case, defendants had adequate time to prepare their defenses and as such were not prejudiced by the delay.

As to the evidence relating to the search warrant, this Court finds that it was not error to

15

deny defendant Simmons' motion to exclude the evidence or for severance, and that defendant Simmons was not prejudiced by the delay in disclosure of the search warrant evidence. He was provided discovery regarding the search warrant several weeks before trial, and was provided fingerprint analysis within a week of its completion, which was within one week of the beginning of jury selection. The evidence relating to the search warrant was not presented to the jury for another six weeks, leaving defendant Simmons with sufficient time to prepare a defense.

Similarly, his claim that the unavailability of some of the physical evidence recovered during the execution of the search warrant caused him prejudice is unavailing. Defendant Simmons cross examined the agent who testified about the search warrant, and the witness noted that he did not remember whether defendant Simmons' name appeared on the documents. (Trial Tr. 11/19/03 p.m. at 125.) There is no indication that the Government's failure to produce the documents was in bad faith. Additionally, given the other evidence recovered from the same search warrant implicating defendant Simmons – including, notably, a fingerprint – this Court finds that defendant Simmons suffered no prejudice from the Government's failure to provide the documents.

Accordingly, defendant Simmons' motion for a new trial on this basis shall be DENIED.

B.      *Admission of Steven Graham's Testimony*

Defendant Simmons argues that Steven Graham's agreement with the Government, entered into in 2002, was fraudulent. The basis of his claim is that the parties to the agreement lied when they stated that Graham was not aware of the usefulness of his testimony until more than a year after sentencing, a representation which is required before a court may grant a reduction in sentence in recognition of the substantial assistance provided by his testimony.

16

(Simmons' Mot. 9.) He points to Graham's meeting with prosecutors and his own trial as indications that Graham knew the information he had would be useful to the Government as early as 1999 or 2000. The Government disagrees, maintaining that while Graham undoubtedly knew that he had information that might be helpful to the Government, he did not anticipate the usefulness of it until he obtained new counsel. (Govt.'s Omnibus Opp'n 14.) The Government also argues that the rule at issue, FED. R. CRIM. P. 35, applies only to the Court's authority to reduce a sentence more than a year after sentencing, (*id.* at 14-15), and thus has no bearing on the validity of the agreement itself (*id.*). The Government also argues that, since the jury found defendant Simmons guilty notwithstanding the evidence regarding the propriety of the agreement, Simmons suffered no prejudice from the illegal agreement between Graham and the Government. (*Id.* at 15-16.)

This Court finds that the agreement was proper. There is no basis for finding that Graham must have known of the usefulness of the information within a year of his sentencing. This Court finds no reason to question the Government's representation that it was only after Graham met with counsel appointed after his sentencing that he became aware of the usefulness of the information. Moreover, even if the agreement were improper, defendant Simmons provides no legal basis for his argument that the propriety of the agreement belied the reliability of Graham's testimony and must have prejudiced defendant Simmons. Even though the time limitations in Rule 35 might have been intended in part to reduce unreliable testimony, as defendant Simmons notes, it does not mean that any testimony given outside those strictures is necessarily unreliable.

Finally, even were this Court to find that the agreement was improper and that it rendered

17

the testimony unreliable, this Court would nonetheless find that defendant Simmons was not

prejudiced by it. He thoroughly cross-examined Graham regarding the agreement and his

decision to cooperate (Trial Tr. 12/16/03 a.m. at 81-120) and provided the jury, in closing

argument, his theory that Graham's testimony was unreliable due the circumstances of the

agreement (Trial Tr. 3/23/04 p.m. at 7-9, 55-56, 78). Based on the foregoing, defendant

Simmons' motion on this basis shall be DENIED.

       *C.*     *Denial of In-Trial Severance Motion Due to Co-Defendants' Conduct*

      Defendant Simmons next argues that this Court erred when it denied his in-trial motion to

sever from co-defendant Oliver. He argues that conduct by defendant Oliver and his counsel led

the jury to believe that he was extremely dangerous, an impression that must have "spilled over"

onto defendant Simmons. (Simmons' Mot. 10-14.) Specifically, he objects to (1) defendant

Oliver's testimony regarding the size and scope of the trial (*id.* at 13-14); (2) testimony that

defendant Oliver attempted to intimidate witnesses Steven Graham and Willie Fears (*id.* at 10-

11); (3) testimony that defendant Oliver was previously convicted for obstruction of justice (*id.* at

11); and (4) defendant Oliver's questioning of a witness that defendant Simmons believes

implicated him (*id.* at 11-13). The Government argues that none of the conduct at issue had any

prejudicial effect on defendant Simmons, because it was directed at another defendant and the

jury was instructed to view the evidence against each defendant separately. (Govt.'s Omnibus

Opp'n 16-18.)

      While defendant Simmons' claim is not that the evidence at issue was improperly

admitted, it should be noted that the evidence at issue was not admitted in error. As this Court

has already noted in its discussion pertaining to all defendants *infra* Part V.G, these defendants

were properly joined for trial and severance was not warranted. Similarly, this Court already

addressed whether any prejudice resulted from defendant Oliver's comments regarding the size

and nature of the trial. For the reasons indicated in the discussion of his motion *infra* Part

VI.A.3, this Court finds that defendants suffered no prejudice from defendant Oliver's testimony

on the subject of size and nature of the trial. Accordingly, in-trial severance was not warranted

on that basis. As to the evidence relating to the intimidation of witnesses, this Court found that it

was properly admitted in the discussion of defendant Oliver's motions *infra* Parts V.G and V.I.

In sum, this Court finds that none of the testimony to which defendant Simmons objects was

improperly admitted.

As to the gravamen of defendant Simmons' claim, this Court finds that the evidence at

issue did not prejudice him. As noted in the discussion of joinder and severance *infra* Part V.H,

severance is a drastic measure not commonly granted when less intrusive measures will suffice.

In this case, for example, the Court employed limiting instructions to ensure that the jury

considered the evidence for each defendant separately. Additionally, defendants were given the

opportunity to cross-examine co-defendant Oliver, during which they could have created distance

between his conduct and testimony and themselves. Finally, the record does not support

defendant Simmons' contention that counsel for defendant Oliver, in his questioning of a

witness, created an implication that defendant Simmons was guilty such that would result in

prejudice to him. Defendant Simmons' motion on this basis shall be DENIED.

D.    *Sufficiency of Evidence for RICO Conviction*

Defendant Simmons maintains that the Government failed to prove the existence of an

"enterprise," as distinguished from an ordinary conspiracy. (Simmons' Mot. 15-24.) He

recounts the testimony of ten cooperators as support for his contention that it failed to demonstrate a vertically integrated enterprise, as opposed to simply an unconnected string of criminal acts. (*Id.*) The Government contends that defendant Simmons' argument is based on a mischaracterization of the law. (Govt.'s Omnibus Opp'n 19-20.) Specifically, it notes that since case law has defined "enterprise" as a group of associated individuals, it is not necessary to show vertical structure. (*Id.* at 25.) This Court finds that, under the prevailing definition of "enterprise," the Government presented sufficient evidence on which a reasonably jury could convict of RICO conspiracy. As the Government notes, the Supreme Court has interpreted the RICO statute to include ongoing organizations in which individuals function as a continuing unit. *United States v. Turkette*, 452 U.S. 576, 583 (1981).

To prove an association-in-fact enterprise, the Government must prove that there was (1) common purpose; (2) organization; and (3) continuity. *See United States v. Perholtz*, 842 F.2d 343, 368 (D.C. Cir.), *cert. denied*, 488 U.S. 821 (1988). "It is not necessary that the enterprise, if it existed, have any particular or formal structure but it must have sufficient organization that its members function and operated together in a coordinated manner in order to carry out the common purpose alleged." *Id.* Here, the Government presented testimony that the group conceived of itself as a unit (*e.g.,* Trial. Tr. 12/11/03 a.m. at 53-54), and that it consisted of individuals, including defendant Simmons, who performed different roles in support of the group's common goals over a period of time. In light of the foregoing, the Government presented sufficient evidence on which a jury could reasonably convict defendants of RICO conspiracy. Defendant Simmons' motion on this basis shall be DENIED.

Since defendant styles his motion as a motion for a new trial based on cumulative error, it

should be noted – as it has been noted elsewhere in this Memorandum Opinion – that the cumulative error analysis does not apply where, as here, the rulings complained of are not found to be error. Moreover, even were they found to be error, this Court would not hold that the their cumulative effect warrants a new trial, because defendant Simmons has failed to demonstrate that their cumulative impact affected a "substantial right." Accordingly, defendant Simmons' motion on this basis shall be DENIED.

IV.     *Defendant Ronald Alfred's Post-Trial Motion for Judgment of Acquittal, Motion to Dismiss and, in the Alternative, Motion for a New Trial* [1995]

Defendant Ronald Alfred makes numerous challenges to his convictions. First, he claims that there was insufficient evidence for conviction on three of the counts; second, he asserts that three types of evidence were improperly admitted; third, he claims that one of the statutes under which he was convicted is invalid; and fourth, he cites cumulative error as grounds for a new trial. This Court shall consider each argument separately.

A.     *Sufficiency of Evidence for the § 841(b) Conviction*

Defendant Ronald Alfred argues that, according to controlling precedent, a conviction under 21 U.S.C. § 841(b) requires the Government to demonstrate that the drug at issue was crack cocaine or another formulation that could be smoked, rather than powder cocaine. (R. Alfred's Mot. 16-17.) He submits that the Government failed to make this showing. (*Id.* at 17.) The Government contends that the evidence amply demonstrated that defendant Ronald Alfred and his co-conspirators "trafficked heavily" in crack cocaine. (Govt.'s Omnibus Opp'n 32.) As such, the Government maintains that there is no ambiguity as to the applicability of the statute. (*Id.* at 32-33.)

21

This Court finds that there was sufficient evidence presented to convict defendant Ronald

Alfred of conspiracy to distribute crack cocaine. Testimony was provided that defendants'

prepared and distributed crack cocaine, providing sufficient basis for a finding that defendants

were engaged in the trafficking of crack cocaine. (*See, e.g.,* Trial Tr. 11/12/03 p.m. at 13-14;

Trial Tr. 12/15/03 a.m. at 79-87; Trial Tr. 1/6/04 p.m. at 25-26.) It is established in this Circuit

that "cocaine base" under 21 U.S.C. § 841(b) encompasses crack cocaine. *See United States v.*

*Brisbane*, 367 F.3d 910, 912 (D.C. Cir. 2004) (noting that "there can be no doubt" that the statute

"include[s] crack"). Accordingly, defendant Ronald Alfred's motion based on sufficiency of

evidence as to this count shall be DENIED.

B.      *Sufficiency of Evidence for the Carlos Cardoza Murder Conviction*

Defendant Ronald Alfred argues that the Government's evidence was insufficient to

convict him of killing a federal witness. (R. Alfred's Mot. 16-17.) He claims that the

Government failed to present any evidence that he either knew that the murder victim was a

federal witness or that he was involved in the murder in order to prevent the victim from

cooperating with the Government. (*Id.* at 18-19.) The Government disagrees, noting that the

statute criminalizes "the killing of an individual with the intent to frustrate [his] possible

cooperation." (Govt.'s Omnibus Opp'n 35 (citing *United States v. Romero*, 54 F.3d 56, 62 (2d

Cir. 1995)). Since it presented evidence that Mr. Cardoza was murdered for that very reason, the

Government maintains that defendant Ronald Alfred's sufficiency of the evidence argument must

fail.

This Court finds that there was sufficient evidence for the jury's convictions of defendant

Ronald Alfred relating to the murder of Mr. Cardoza, and for it to find that the intent for the

22

murder was to frustrate the victim's possible cooperation. The jury heard testimony that the

conspiracy sought Mr. Cardoza's death in order to prevent him from possibly cooperating with

law enforcement. (Trial Tr. 10/21/03 p.m. at 147-49.) This is sufficient under the statute and

case law. 18 U.S.C. § 1512(a)(1)(C); *see, e.g., United States v. Romero*, 54 F.3d 56, 62 (2d Cir.

1995). In light of the jury's convictions of defendant Ronald Alfred for the narcotics and RICO

conspiracies, murder and murder conspiracy, they could reasonably have found that he aided and

abetted the murder of Mr. Cardoza with knowledge of the conspiracy's motivation for the killing.

Accordingly, defendant Ronald Alfred's motion based on the sufficiency of evidence for this

conviction shall be DENIED.

      *C.*    *Sufficiency of Evidence for the Murder and Murder Conspiracy Convictions*

      Defendant Ronald Alfred argues that the Government's evidence was insufficient to

convict him for murder and murder conspiracy. (R. Alfred's Mot. 19-21.) He claims that the

Government failed to demonstrate that his assistance in the murders was provided with

knowledge that the conspiracy intended to kill anyone. (*Id.* at 20.) The United States disagrees,

citing evidence that was presented which showed that defendant Ronald Alfred had a motive

and/or was aware of the plan to kill each victim and assisted in the murders. (Govt.'s Omnibus

Opp'n 36-38.)

      This Court finds that the evidence presented was sufficient to find defendant Ronald

Alfred guilty of the murder and murder conspiracy convictions relating to Joseph Thomas, Carlos

Cardoza and Anthony Watkins. The jury heard testimony that defendant Ronald Alfred had a

motive to kill Mr. Thomas (Trial Tr. 10/29/03 p.m. at 22-25; Trial Tr. 11/4/03 p.m. at 130-31;

Trial Tr. 11/18/03 a.m. at 39-40), had attacked him once before (Trial Tr. 11/4/03 p.m. at 130-31)

and committed acts to assist in his murder (Trial Tr. 10/21/03 p.m. at 33-34, 48-50). The

Government also presented testimony that defendant Ronald Alfred was aware of the plan to kill

Mr. Cardoza (Trial Tr. 10/21/03 p.m. at 151-52), helped to search for him (Trial Tr. 10/21/03

p.m. at 152, 156-57), provided a gun to be used in the act (Trial Tr. 10/21/03 p.m. at 153),

provided his car to assist in the act (Trial Tr. 10/21/03 p.m. at 152-53, 159), and benefitted from

his murder (Trial Tr. 10/22/03 a.m. at 30). Finally, testimony indicated that defendant Ronald

Alfred knew of the plan to kill Mr. Watkins (Trial Tr. 10/22/03 a.m. at 49-50), helped the group

locate Mr. Watkins (*id.* at 47-48; Trial Tr. 12/3/03 a.m. at 12-14) and provided a gun for the

murder (Trial Tr. 12/3/03 a.m. at 12, 14-15).

In light of the foregoing, the evidence was sufficient to support defendant Ronald

Alfred's convictions relating to the murder of Joseph Thomas, Carlos Cardoza and Anthony

Watkins. Defendant Ronald Alfred's motion based on insufficient evidence for these convictions

shall be DENIED.

### D.    *Admission of Photographic Evidence*

Defendant Ronald Alfred claims that this Court improperly admitted into evidence a

photograph of a substance purported to be crack cocaine seized from his home. (R. Alfred's

Mot. 17-18.) Since the Government never introduced evidence that the substance was actually

narcotics, defendant Alfred maintains that the photograph was both irrelevant and unduly

prejudicial. (*Id.* at 18.) The Government maintains that the photograph of suspected crack, along

with the other evidence seized during the search warrant, was relevant to charges of narcotics

trafficking. (Govt.'s Omnibus Opp'n 18.) Furthermore, the Government argues, in light of all

the evidence against defendant Alfred, the admission of a photograph showing a small plastic bag

of suspected crack was not unduly prejudicial. (*Id.*)

This Court finds that the evidence was properly admitted. Under the Federal Rules of Evidence, relevant evidence is that which tends to make any material fact more or less probable. FED. R. EVID. 401. Here, evidence that suspected crack cocaine was found in defendant Ronald Alfred's home was certainly relevant to charges of drug trafficking, because it tended to make it more probable that he trafficked in that substance. That the Government had not identified the substance depicted does not render the photograph inadmissible.

As relevant evidence, the photograph was admissible unless its probative value was substantially outweighed by its prejudicial effect. FED. R. EVID. 403. This Court does not find that the photograph's probative value was outweighed by its prejudicial effect. Unfair prejudice results when evidence might "lure the factfinder" to determine guilt "on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Orenuga*, 430 F.3d 1158, 1164-65 (D.C. Cir. 2005) (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997)) (internal quotations omitted). This Court does not find that the jury's viewing of a photograph of a plastic bag filled with a substance purported to be crack cocaine would lead them to conclude guilt improperly. In viewing the photograph, the jury was capable of taking into account the fact that the Government had not proven the identity of the substance. There is no basis for finding that it could not have properly decided for itself the probative value of the photograph, along with all the other evidence presented, as evidence of defendant Ronald Alfred's guilt. Accordingly, defendant Ronald Alfred's motion based on improper admission of the photograph shall be DENIED.

25

### E.  Admission of Evidence of Religious Beliefs

Defendant Ronald Alfred maintains that the Government impermissibly bolstered a witness' credibility by referring to his religious conversion. (R. Alfred's Mot. 21; R. Alfred's Reply 12-13.) The Government disputes that the evidence was admitted for the purpose of bolstering. (Govt.'s Omnibus Opp'n 39.) Rather, the Government contends, the evidence was admissible to explain the witness' motive for cooperating with law enforcement. (*Id.*)

This Court finds that the evidence was properly admitted. While defendant Ronald Alfred correctly states the rule that evidence of religious beliefs may not be used to impair or enhance credibility, FED. R. EVID. 610, it may be admissible for other purposes, such as to show motive. *See United States v. Hoffman*, 806 F.2d 703, 708 (7th Cir. 1986) (noting that "[t]he law is eminently clear that the court may receive evidence as to the defendant's motive" for committing a crime). Here, the testimony was elicited to show the witness' motive for cooperating with law enforcement. (Trial Tr. 12/1/03 p.m. at 15-17; Trial Tr. 12/3/03 a.m. at 52.) Any incidental effect that his motive to cooperate might have on his perceived credibility as a witness does not fall within the ambit of evidence prohibited under the rule. If it did, much otherwise admissible evidence concerning a witness' conduct would be rendered inadmissible because of its indirect effect on credibility. That result would not be consistent with the purposes of Rule 610. Based on the foregoing, defendant Ronald Alfred's motion based on improper admission of evidence relating to religious beliefs shall be DENIED.

### F.  Admission of Prior Bad Acts Evidence

Defendant Ronald Alfred contends that it was error to admit the following evidence of alleged prior bad acts: (1) his purchase of large quantities of powder cocaine during the late

1980s and early 1990s; (2) his 1989 arrest for possessing a kilogram of cocaine; (3) his 1991

arrest for possessing a firearm; (4) his 1994 arrest for possessing a firearm; and (5) his role in the

murder of Kairi Ball.[1]  (R. Alfred's Mot. 2-7; R. Alfred's Reply 2-10.)  Specifically, he argues

that the evidence was admitted solely as character evidence, impermissible under Federal Rule of

Evidence 404(b).  (R. Alfred's Mot. 4-5; R. Alfred's Reply 6-9.)  It is his position that the

Government's claim that the evidence was relevant to show the circumstances leading up to his

entry into the conspiracy is unsupported by the record because the Government failed to connect

the prior events to the conspiracy.  (R. Alfred's Mot. 5-6.)  He further argues that this Court's

failure to conduct the balancing test required by Rule 403 on the record is reversible error (*id.* at

6) and that application of the balancing test reveals that the prejudicial impact of the evidence far

outweighs any probative value (*id.* at 7; R. Alfred's Reply 9-10).

The Government believes that the evidence was properly admitted.  (Govt.'s Omnibus

Opp'n 26-28.)  It presents the same arguments it did during trial when defendants raised these

objections:  that the evidence "was relevant to proving the existence, scope and goals of the

charged conspiracy."  (*Id.* at 26.)  As such, the Government contends, the evidence was not

subject to Rule 404(b).  (*Id.*)

As this Court previously ruled, the evidence was admissible to show the formation of the

conspiracy and particularly the circumstances which led defendant Ronald Alfred to join the

conspiracy.  Evidence relevant to proving a conspiracy is admissible, regardless of when the acts

---

[1] Defendant Ronald Alfred is unclear as to which prior bad acts he challenges in this motion. He lists only these four, but refers to them as "included" in "numerous instances" of alleged prior bad acts. He also mentions another prior bad act for which evidence was admitted, the murder of Kairi Ball, but only parenthetically. In the interest of giving defendant Ronald Alfred every opportunity to present his claims, this Court shall review the four prior bad acts that he specifically listed as being the subject of his motion, and shall also consider the admission of the Kairi Ball murder.

were committed. *United States v. Diaz*, 878 F2d 608, 613-15 n.2 (2d Cir. 1989) ("[O]therwise

relevant evidence is not rendered inadmissible because it relates to events falling outside the time

frame alleged in an indictment."). The fact that evidence "precedes the date of the inception of

the conspiracy charged in the indictment" does not preclude its admission. *Id.* at 616. Further,

[e]vidence of behavior antedating the period covered by the indictment is generally admissible as

bearing on the existence and purpose of the conspiracy and the significance of later behavior."

*United States v. Bates*, 600 F.2d 505, 509 (5th Cir. 1979) (citations omitted).

     In light of the foregoing, the evidence at issue here was admissible as either direct

evidence of the conspiracy, or evidence inextricably intertwined therewith, and was not subject to

Rule 404(b) analysis. Moreover, even were it deemed to be error, it would be harmless in light

of the other evidence of defendant Ronald Alfred's involvement in the conspiracy. *See, e.g.*,

*United States v. Crowder*, 141 F.3d 1202, 1209 (D.C. Cir. 1998) (en banc). Accordingly,

defendant Ronald Alfred's motion based on improper admission of prior bad acts evidence shall

be DENIED.

     G.    *Validity of 21 U.S.C. § 841(b)*

     Defendant Ronald Alfred raises, for the first time, an argument that the statute under

which he was convicted for narcotics conspiracy has been rendered unconstitutional by a decision

of the Supreme Court (R. Alfred's Mot. 8-14; R. Alfred's Reply 10-12), and in the alternative,

that it is void for vagueness (R. Alfred's Mot. 14-15). The statute is unconstitutional, he argues,

because the sentencing factors impermissibly increase the statutory maximum. (*Id.* at 13.)

Although he concedes that neither this Circuit nor the Supreme Court have directly ruled on this

issue, and that this Court has ruled contrary to his position, he claims that a 9th Circuit case which

has since been reversed (and the dissent to the reversal) supports his view. (*Id.* at 8-11.) In the alternative, he argues that § 841(b) is void for vagueness because the term "cocaine base" is not sufficiently distinguished from "cocaine." (*Id.* at 14-15.)

The Government argues that these claims should be rejected because they were not raised before trial. (Govt.'s Omnibus Opp'n 28.) In the alternative, the Government argues that defendant Ronald Alfred's reliance on a single case that has not been followed by any other court is sufficient basis to reject defendant Ronald Alfred's claims. (*Id.* at 29.) Finally, the Government maintains, the void for vagueness claim must fail because there was no vagueness as the law applied to his conduct. (*Id.* at 30-31.)

Under Federal Rule of Criminal Procedure 12(b)(3)(B), challenges to the indictment must be raised before trial. The Court may permit a defendant to make objections or defenses during or after trial if the defendant demonstrates good cause. In this case, defendant Ronald Alfred fails to describe the good cause that justifies the untimeliness of his arguments. Without any indication why arguments that could have been raised at any point after return of the indictment have been raised for the first time in a post-trial motion, this Court declines to entertain his motion. Accordingly, defendant Ronald Alfred's motion based on the invalidity of § 841(b) shall be DENIED.

V.      *Defendant Deon Oliver's Motions*

A.      *Motion for Judgment of Acquittal* [1678]

Defendant Oliver seeks a judgment of acquittal on a count charging him with carrying or using a firearm in relation to a drug trafficking offense. (Oliver's Mot. Acquittal ¶¶ 1-2.) He claims that the Government failed to prove that he "used" the weapon "during and in relation to"

a drug trafficking offense, as required by the statute. (*Id.* ¶¶ 3-6.) He concedes that he did "carry" the weapon as that term has been construed by courts, but argues that nonetheless, the charge cannot stand because no evidence was offered to show that the firearm "had some purpose or effect with respect to any drug trafficking offense or that it was in furtherance of an alleged conspiracy to distribute drugs." (*Id.* ¶ 6.)

This Court finds that the jury was presented with sufficient evidence on which they reasonably could convict defendant Oliver under the statute. The jury returned guilty verdicts on numerous counts relating to the narcotics conspiracy and the RICO conspiracy. Viewing the evidence in the light most favorable to the Government, this Court finds that the jury reasonably could have found that he carried the weapon in relation to a drug trafficking offense. Accordingly, defendant Oliver's motion based on insufficient evidence shall be DENIED.

B.    *Motion for New Trial Based on Improper Substitution of Juror* [1850]

Defendant Oliver argues that this Court's substitution of an alternate juror during deliberations was error, entitling him to a new trial. The basis of his motion is twofold: first, he argues that the Court insufficiently investigated whether the alternate juror talked about the case during the period between being discharged and recalled. (Oliver's Juror Substitution Mot 5.) Second, defendant Oliver claims that once the alternate joined the jury, the group did not begin deliberations anew, but rather picked up where the majority of the jurors had left off, and that the Court failed to employ any procedural safeguards to prevent this result. (*Id.* at 5-6.)

The Government maintains that the Court followed proper procedure in recalling and substituting the juror. (Govt.'s Omnibus Opp'n 114-15.) It notes that none of the defendants objected to the substitution of the juror, and might have even agreed that they preferred the

particular juror who was called back. (*Id.* at 114.) The Court, the Government argues, complied

with Federal Rule of Criminal Procedure 24 by (1) instructing the alternates at the end of trial not

to discuss the case with anyone because they could be recalled; (2) questioning the substitute

juror upon her return to satisfy itself that she had followed that instruction; and (3) instructing all

jurors to begin their deliberations anew, and providing new verdict forms. (*Id.* at 115.)

Federal Rule of Criminal Procedure 24 reads as follows:

> The court may retain alternate jurors after the jury retires to
> deliberate. The Court must ensure that a retained alternate does not
> discuss the case with anyone until the alternate replaces a juror or is
> discharged. If an alternate replaces a juror after deliberations have
> begun, the court must instruct the jury to begin its deliberations anew.

In this case, this Court did ensure that the alternate had not discussed the case, both

before and after she was recalled, by instructions and questioning. This Court also instructed all

jurors to begin their deliberations anew once the substituted juror joined them, and reinforced

this instruction by replacing all of the verdict forms with blank ones. These procedural

safeguards were sufficient to ensure that the substitution of the juror did not prejudice

defendants' rights, particularly in light of the lack of any indication that they were ineffective.

Finally, as to the deliberations after the alternative juror returned, this Court declines to engage in

speculation as to what might be inferred by the length of time the jury deliberated before and

after the substitution of the juror; or by the types of evidence they reviewed before and after.

Any disparities are far smaller than defendant Oliver portrays them to be, and as such do not

warrant an inferential inquiry when there is no reason to suspect that the new juror was coerced.

In light of all the factors, this Court finds that the juror was properly substituted and defendant

Oliver's motion shall be DENIED.

C.      *Motion for Judgment of Acquittal* Non Obstante Verdicto *or Alternatively for New*
        *Trial Based on the Rah-Rah Amendment to the Indictment* [1858]

Defendant Oliver argues that he is entitled to either a judgment of acquittal

notwithstanding the verdict or a new trial because the Government was permitted to amend the

Indictment in an improper manner. The basis of his motion is the Government's motion to

amend the Indictment of defendant Oliver in the three places it referred to solicitation of the

murder of Robert Harris. After presentation of its evidence, including witnesses who testified as

to "Rah-Rah" but not Robert Harris, the Government's motion to substitute the name "Rah-Rah"

for the name Robert Harris was granted. Defendant Oliver argues that, even if the amendment

was a mere correction of the type typically permitted by courts, this amendment prejudices him

because the name "Rah-Rah" fails to provide sufficient specificity to protect him against double

jeopardy. (Oliver's Indictment Amendment Mot. 10-11.)

The Government maintains that the original language in the indictment put the defendants

on notice as to the identity of the victim relating to the charges, and that the change therefore did

not affect defendants' ability to present a defense. (Govt.'s Omnibus Opp'n 118-19.) As such,

the Government argues, the amendment was properly allowed and cannot be the basis for a

judgment of acquittal or a new trial. (*Id.* at 119.)

As a general rule, an indictment must include a specific statement of the "essential facts

constituting the offense charged." FED. R. CRIM. P. 7(c)(1). Under the harmless error rule, any

variance that does not affect substantial rights of the defendant will be disregarded. FED. R.

CRIM. P. 52(a). A variance in the form of proof at trial that differs materially from the facts

alleged in the indictment does not affect a defendant's substantial rights unless it impedes

32

defendant's ability to mount a defense, leaves him vulnerable to double jeopardy or represents an

unfair surprise. *See, e.g., United States v. Good Shield*, 515 F.2d 1, 2-3 (8th Cir. 1975).

Amending an indictment by replacing a name with a nickname does not amount to a

variance that affects substantial rights of the defendant. *See, e.g., United States v. Moore*, 198

F.3d 793, 796 (10th Cir. 1999) (holding that changing the first name of a victim did not prejudice

substantial rights of the defendant); *Good Shield*, 515 F.2d at 1 (holding that changing a name to

include "Sr." rather than "Jr." did not prejudice substantial rights of the defendant); *United States*

*v. Denny*, 165 F.2d 668, 670 (7th Cir. 1947) (affirming district court's decision to allow

amendment to spelling of a name as merely one of form).  Defendants were on notice as to the

identity of the alleged victim, and thus the correction did not hamper their ability to mount a

defense.  Additionally, the record contains sufficient detail to protect defendants against a second

prosecution for the same offense.  In light of the foregoing, defendant Oliver's motion based on

the amendment to the indictment shall be DENIED.

      D.     *Motion for New Trial Based on Improper Dismissal of Dissenting Juror* [1870]

Defendant Oliver argues that he is entitled to a new trial because the Court had

insufficient basis for dismissing Juror No. 9.  (Oliver's Improper Dismissal Mot. ¶¶ 9, 12-13.)

While the Court found that the juror had reached his own decision before deliberations began and

would not participate in discussion with the other jurors, defendant Oliver contends that the

Court arrived at this conclusion without sufficient investigation.  (*Id.* ¶ 20.)  The Government

maintains that there was sufficient basis for this Court's decision to dismiss Juror No. 9.

(Govt.'s Omnibus Opp'n 102-06.)  There was evidence, the Government recounts, that Juror No.

9 was not participating in deliberations, had made up his mind before deliberations began, and

had engaged in misconduct by removing notes from the jury room. (*Id.*) The Government argues

that the foreperson's testimony established that Juror No. 9 had, from the beginning of

deliberations, refused to sit with the other jurors and participate. (*Id.* at 108.) Furthermore, the

Government argues, defendants were given the opportunity to request additional questions to be

asked of Juror No. 9 and could have raised any objections at that time. (*Id.* at 110-13.)

Under Federal Rule of Criminal Procedure 23(b), a court may excuse a juror upon a

showing of good cause. Whether good cause exists is a case-by-case decision made in the trial

court's discretion, *see United States v. Essex*, 734 F.2d 832, 845 (D.C. Cir. 1984), but case law is

clear that good cause exists when a juror refuses to participate in deliberations or to follow the

law. *See United States v. Baker*, 262 F.3d 124, 132 (2d Cir. 2001); *United States v. Barone*, 114

F.3d 1284, 1307 (1st Cir. 1997).

This Court finds, as it did previously, that there was good cause to dismiss Juror No. 9.

There was evidence beyond a reasonable doubt, based on the foreperson's testimony and notes,

and based on Juror No. 9's responses to the Court's questions, that he had refused to participate

in deliberations. (Trial Tr. 4/15/04 a.m. at 5-9.) Juror No. 9's claim that he was participating

was not credible to the Court in light of the foreperson's testimony, and this Court has been

presented with no reason to question its determination. This Court finds no merit in defendant

Oliver's position that the juror might have been dismissed because of his dissenting views.

There is no basis to support such an allegation; indeed, there is no basis for finding that Juror No.

9 ever even expressed to either the other jurors or the Court his views of the evidence. Indeed,

the refusal to communicate and discuss his views was the very reason for his dismissal.

Defendants were included in the investigation into the matter and were given the opportunity to

34

submit questions to be asked of Juror No. 9 prior to his dismissal. Considering the foregoing, this Court finds defendant Oliver's motion to be unsupported. It shall be DENIED.

E.      *Motion to Vacate Gun Conviction or Alternatively for Hearing to Determine Whether Gun Destruction Was in Bad Faith* [1946]

Defendant Oliver argues that his conviction on Count 83 for possession of a firearm must be vacated because the evidence has been destroyed. In support of his motion, he points to the testimony of a government witness as to the usual procedure for processing weapons evidence, and who stated that he did not know the location of the weapon in this case. (Oliver's Gun Destruction Mot. ¶¶ 3-4, 6.) Defendant Oliver argues that, since the gun was not tested, nor was the serial number recorded prior to its being destroyed, he will never know whether exculpatory evidence might have been derived from the gun. (*Id.* ¶ 6.) Finally, defendant Oliver submits that, if the Court declines to vacate the conviction, he should be permitted to pursue discovery to determine whether the police destroyed the gun in bad faith. (*Id.*)

The Government opposes defendant Oliver's motion on the ground that there is no evidence that the gun was ever destroyed. (Govt.'s Omnibus Opp'n 71-72.) The Government further disputes defendant Oliver's claim that the gun was not inspected or tested prior to its destruction: to the contrary, the Government asserts, defendant long ago was provided several reports indicating the serial number and the fact that the gun was operational. (*Id.* at 72-73.)

This Court finds that defendant Oliver has presented insufficient evidence for a finding that the gun was destroyed, much less that it was destroyed in bad faith. The Government states that the gun, "in fact, has not been destroyed." (*Id.* at 71.) Defendant Oliver has failed to provide any basis for finding that the gun has been destroyed; the testimony of one witness that

35

he did not know the gun's whereabouts does not establish its destruction. Similarly, the

Government notes, and defendant Oliver does not dispute by a Reply, that it furnished him with

the serial number and results of firing tests in discovery. Absent some showing that the gun was

destroyed or otherwise kept from defendant Oliver, this Court shall not credit unsupported claims

that it was destroyed. Accordingly, defendant Oliver's motion to vacate or alternatively for a

hearing shall be DENIED.

F.     *Motion for New Trial Based on Improper Instruction After Jury Revealed Its*
       *Division During Deliberations* [1965]

Defendant Oliver maintains that this Court's instructions to the jury after it had begun

deliberations were error justifying a new trial. The jury indicated in several notes that one juror

would not participate in deliberations. This Court issued no response to the first several notes,

but upon receiving the third and fourth, instructed the jury to continue deliberating. Defendant

Oliver contends that the jury implied a highly uneven split in its notes, and that in such a case,

both the lack of response and the eventual instruction may have coerced any dissenting juror(s)

to acquiesce in the majority's verdicts. (Oliver's Improper Instruction Mot. ¶¶ 8, 10.)

The Government disagrees with defendant Oliver's assessment that the notes revealed a

split. (Govt.'s Omnibus Opp'n 88-89.) It notes that the judge never asked the jury about its split,

that the jury never revealed it, and that no other defense counsel agreed with defendant Oliver's

assessment at the conference regarding the third and last note received from the jury. (*Id.* at 89-

90, 97-98.) Moreover, the Government argues that the Court's responses – including the

decision to issue no response – were proper. (*Id.* at 97.)

This Court finds that no error occurred. The Court conferred with counsel regarding each

36

of the jury's notes about the difficulty of deliberations and considered their proposed responses.

The instructions eventually issued by the Court had been approved under similar circumstances

by the Court of Appeals for this Circuit in *United States v. Black*, 843 F.2d 1456 (D.C. Cir.

1988).

More importantly, the Court was never aware of the jury's numerical split: it never asked

the jury what its split was, and none of the notes revealed any split. Since the Court's

instructions to continue deliberating did not come in response to a note revealing a split, none of

the case law cited by defendant Oliver is relevant. This Court finds no basis to conclude that its

instructions were in error. Defendant Oliver's motion shall be DENIED.

G.     *Motion for New Trial Based on Improper Admission of Other Crimes Evidence*
       [1975]

Defendant Oliver argues that this Court improperly admitted evidence relating to prior

bad acts, and that the evidence led the jury to convict based on propensity. The evidence to

which he objects, and the reasons for his objections, are as follows. First, he objects to the

testimony of government witness Bethlehem Ayele that she had observed defendant Oliver

selling drugs, because it was at a time before defendant Oliver was alleged to have joined the

conspiracy and thus was only relevant as impermissible propensity evidence. (Oliver's Improper

Admission Mot. ¶¶ 3, 5.) Second, he claims that the testimony of government witness Caprice

Whitley that she heard defendant Oliver state that he had a body in the trunk of his car was

improper because it was never proven that there was anything in his trunk and as such could only

be relevant as propensity evidence. (*Id.* ¶¶ 3, 6.)

Third, defendant Oliver objects to the testimony of a police officer that defendant Oliver

37

made incriminating statements after being taken into custody for unauthorized use of a vehicle;

he claims that her testimony was inappropriate because she was allowed to discuss many

prejudicial details about the arrest even though charges were never brought. (*Id.* ¶¶ 3, 7.) Fourth,

defendant Oliver objects to the testimony of a government witness that defendant Oliver

threatened to kill his grandmother if he testified, because the witness' only basis for the threat

was what another inmate told him, and because the Government failed to "connect up" this

testimony as it promised to do. (*Id.* ¶¶ 3, 8.) Fifth and finally, defendant Oliver claims that

prejudicial propensity evidence was allowed through the introduction of evidence relating to

defendant Oliver's prior obstruction of justice conviction, including his grand jury testimony in

that case and the facts of the case. (*Id.* ¶¶ 3, 9.) Defendant Oliver contends that since all of this

evidence was introduced to prove a character trait, it "infected" the trial with unfair prejudice

against him, and he consequently is entitled to a new trial. (*Id.* ¶¶ 10-12.)

     The Government argues that defendant Oliver's claims are without merit. First, it

disputes the claim that Bethlehem Ayele's testimony was admitted as "other crimes" evidence;

rather, the Government asserts that her testimony was admitted as evidence of acts that led to

defendant Oliver's entry into the charged conspiracy. (Govt.'s Omnibus Opp'n 76-77.) Her

testimony supported the Government's contention that defendant Oliver entered the conspiracy

partly as a result of his relationships with other drug sellers because it described defendant

Oliver's early narcotics-related interaction with those persons. (*Id.* at 77-78.) Second, the

Government contends that Caprice Whitley's testimony that she heard defendant Oliver say that

he had a body in the trunk was properly admitted because it tended to show the relationship

between defendants in the organization and also that members of the organization routinely

committed acts of violence in furtherance of its goals. (*Id.* at 78-79.)

Third, the Government argues that the police officer's testimony regarding defendant Oliver's statements after being arrested were properly admitted to rebut defendant Oliver's testimony that he did not sell drugs. (*Id.* at 79-80.) The Government disputes defendant Oliver's contention that the police officer testified to any inappropriate matters relating to the arrest. (*Id.* at 80.) Fourth, as to the testimony that defendant Oliver had threatened a witness' grandmother, the Government contends that it was properly admitted as consciousness of guilt, and that defendant Oliver's objection that it was inadmissible hearsay is unavailing since he failed to make the objection at trial. (*Id.* at 80-81.) Fifth, the Government maintains that the evidence relating to defendant Oliver's prior conviction and grand jury testimony was properly admitted to impeach him with a prior conviction and prior inconsistent statements. (*Id.* at 82-83.)

This Court finds that defendant Oliver's claims are without merit. As the Government noted, defendant Oliver misstates the basis on which the evidence was admitted. None of the evidence at issue was admitted as "other crimes" evidence under Rule 404(b); rather, it was properly admitted pursuant to other provisions of the federal rules. Specifically, Bethlehem Ayele's testimony was admitted as directly relevant to the circumstances of defendant Oliver's entry into the conspiracy and to his relationship to others in the organization. Such evidence may be relevant to these factors and properly admissible notwithstanding that it occurred prior in time to the conspiracy itself. *See United States v. Diaz*, 878 F.2d 608, 615 n.2 (2d Cir. 1989) (noting that "otherwise relevant evidence is not rendered inadmissible because it relates to events falling outside the time frame alleged in an indictment"). As such, Bethlehem Ayele's testimony was properly admitted. Similarly, this Court finds that the testimony of Caprice Whitley was properly

admitted as direct evidence of the violence of the organization and of the roles that different members in the organization occupied. It was highly probative of these factors and not so prejudicial as to outweigh the probative value.

As to the police officer's testimony, this Court finds that it was properly admitted in rebuttal of defendant Oliver's own testimony. The officer did not testify to extraneous prejudicial details, as defendant Oliver alleges, nor was the evidence admitted pursuant to Rule 404(b). Admissions are independently admissible under Rule 801(d)(2). The testimony that defendant Oliver had threatened a witness' grandmother was also properly admitted. Such statements may be admissible as probative of defendant's consciousness of guilt. *Cf., e.g., United States v. Martinez*, 681 F.2d 1248, 1256 (10th Cir. 1982) (noting admissibility of evidence of flight as expressing "consciousness of guilt"). Finally, the Government was properly permitted to impeach defendant Oliver by questioning him about his prior conviction and his prior statements to the grand jury, to the extent that they were inconsistent with his trial testimony. As the foregoing demonstrates, defendant Oliver's claims are misplaced: the evidence was properly admitted pursuant to the Federal Rules of Criminal Procedure. His motion for a new trial, therefore, shall be DENIED.

> H.  *Motion for New Trial Based on Denial of Pre-Trial & In-Trial Motions to Sever Defendants* [1983]

Defendant Oliver contends that the Court's decision to hold a joint trial for these six defendants was improper. He claims that the Court should have granted his pre-trial or in-trial motions to sever from all but one of the other co-defendants. (Oliver's Severance Mot. ¶ 2.) He claims that he was prejudiced by the "gross disparity" in the weight of evidence against him as

compared to that against his co-defendants and he contends that much of the evidence would not have been admissible had he been tried separately. (*Id.* ¶¶ 8-12.) Additionally, defendant Oliver argues that the scale and complexity of the trial made it difficult for the Court to properly charge the jury, and even if properly instructed, the jury may have convicted him on evidence relating to a co-defendant. (*Id.* ¶¶ 13, 15.)

The Government disagrees with defendant Oliver's assertions that severance was necessary. It disputes his characterization of a "gross disparity" in the evidence, noting that the evidence introduced to establish the conspiracies was relevant to all defendants, and that severance was not warranted merely because defendants played different roles in the conspiracies. (Govt.'s Omnibus Opp'n 74-75.) It also argues that there is no reason to suspect that the jury did not follow the Court's instructions and consider the evidence only as it applied to each defendant. (*Id.* at 75.) Finally, the Government maintains that the size and complexity of the trial did not require severance. (*Id.* at 75-76.)

This Court finds that its prior decisions denying severance were proper, and that the defendants were properly tried together. First, joinder is governed by Rule 8(b), which states:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All of the defendants need not be charged in each count.

FED. R. CRIM. P. 8(b). Charges are properly joined when they are based on a "series of acts or transactions" that are part of "a common scheme or plan." *United States v. Brown*, 823 F.2d 591, 598 (D.C. Cir. 1987) (quoting *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)) (*cited*

*in Gray*, 173 F. Supp. 2d at 5). In conspiracy cases, joinder is presumptively proper where the alleged acts are part of the same series of acts or transactions. *See United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996) (citing *Perry*, 731 F.2d at 985).

Moreover, joinder is preferred in conspiracy cases, *cf. United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999) ("Joint trials are favored in RICO cases."); *see also United States v. Walker*, 720 F.2d 1527, 1533 (11th Cir. 1983), *cert. denied*, 465 U.S. 1108 (1984) (noting that the "general rule" that jointly indicted defendants are to be jointly tried "applies with particular force to conspiracy cases"), and are heavily favored in this Circuit. *United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991). Even in cases that do not involve allegations of a conspiracy, joint trials provide the advantages of preserving judicial resources and promoting consistent verdicts. *Buchanan v. Kentucky*, 483 U.S. 402, 418 (1987); *Gray*, 173 F. Supp. 2d at 6 (citing *United States v. Edelin*, 118 F. Supp. 2d 36, 40 (D.D.C. 2000) (Lamberth, J.)).

In this case, all defendants were charged as participants in a narcotics conspiracy and a RICO conspiracy. The role of each defendant was described in the indictment: each was involved in the distribution of narcotics and in the possession of firearms or the participation in acts of violence. As such, each defendant was alleged in the indictment to have been involved in a single conspiracy and to have perpetrated acts of violence to maintain that business.

Neither case law nor Rule 8(b) supports the idea that joinder is only proper, in a conspiracy case involving an ongoing and wide-ranging criminal enterprise, when each alleged criminal act is directly in furtherance or consequence of every other alleged crime. Rather, the common thread is the conspiracy itself. In a conspiracy, co-conspirators engage in acts or transactions that form a "series of acts or transactions" as required under Rule 8(b). Thus, there

42

is a "logical relationship between the acts or transactions within the series" that forms the basis

for joinder. *Nicely,* 922 F.2d at 853. Accordingly, this Court finds that defendants were properly

joined under Rule 8(b).

In addition to having been properly joined, it was proper for this Court to deny severance.

The discretion to sever defendants to avoid the risk of unfair prejudice is governed by Federal

Rule of Criminal Procedure 14(a), which reads:

> If the joinder of offenses or defendants in an indictment, an
> information, or a consolidation for trial appears to prejudice a
> defendant or the government, the court may order separate trials of
> counts, sever the defendants' trials, or provide any other relief that
> justice requires.

FED. R. CRIM. P. 14(a). In general, severance will be denied unless defendants can demonstrate

substantial prejudice to their rights. *Zafiro v. United States,* 506 U.S. 534 (1993). "Substantial

prejudice" is defined as a "serious risk that a joint trial would compromise a specific trial right of

one of the defendants, or prevent the jury from making a reliable judgment about guilt or

innocence." *Id.* at 539 *(quoted in Edelin,* 118 F. Supp. 2d at 41; *quoted in Gray,* 173 F. Supp. 2d

at 6). Even though joinder generally is preferred in conspiracy trials, courts have expressed

concern for the prejudice inherent therein, *see, e.g., United States v. Mardian,* 546 F.2d 973, 977

(D.C. Cir. 1976), and the risk may be greater when the conspiracy alleges disparate crimes and

smaller sub-conspiracies. *Kotteakos,* 328 U.S. at 773.

The trial judge enjoys broad discretion to determine whether prejudice exists, and if so,

what remedy is appropriate. *Zafiro,* 506 U.S. at 538-39 (citing *United States v. Lane,* 474 U.S.

438, 449 n.12 (1986)); *see also United States v. Butler,* 822 F.2d 1191, 1194 (D.C. Cir. 1987)

(noting that the "trial judge is given great latitude to balance the institutional benefits that joint

trials confer . . . against the possibility that . . . the jury [will] be either confused or prejudiced in assessing the evidence against that particular defendant"). Other, less intrusive remedies such as additional jury instructions are preferred over severance. To prevail on a motion for severance, a relatively drastic measure, defendants face a "heavy burden": they must show that the threatened prejudice exists and can be remedied by severance alone. *Gray*, 173 F. Supp. 2d at 7 (citing *Edelin*, 118 F. Supp. 2d at 42 (citing *United States v. Causey*, 185 F.3d 407, 416 (5th Cir. 1999))); *see also United States v. West*, 877 F.2d 281, 287-88 (4th Cir.), *cert. denied*, 493 U.S. 869 (1989).

In this case, in addition to the conspiracies, each defendant was implicated in at least one murder or attempted murder. Any difference in the number of violent acts with which defendants are charged is merely one of degree. Since the indictment in this case named 21 defendants, some severance was necessary to accommodate the physical limitations of the courtroom and hardship on the jurors, defendants, and this Court. The trial groups were determined based on the geographic areas in which defendants operated. A defendant is not entitled to severance merely because he might have a better chance of acquittal if he were tried separately. *See United States v. Halliman*, 923 F.2d 873, 884-85 (D.C. Cir. 1991) (quoting *United States v. Manner*, 887 F.2d 317, 324 (D.C. Cir. 1989), *cert. denied*, 493 U.S. 1062 (1990)). Rather, the showing required to prevail on a motion for severance is that joinder would result in unfair prejudice that would violate the defendant's constitutional fair trial rights or would "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539 (*quoted in Gray*, 173 F. Supp. 2d at 10) (*cited in Edelin*, 118 F. Supp. 2d at 41). Defendants made no such showing in this case. Defendant Oliver's conclusory statements about the weight of the evidence or the complexity of the case fail to meet his burden. Accordingly, defendant Oliver's motion for

a new trial based on the denial of pre-trial and in-trial motions to sever shall be DENIED.

   I.      *Motion for New Trial Based on Cumulative Effect of Trial Errors* [1989]

   In this motion, defendant Oliver contends that each incident identified in his separate

post-trial motions discussed *supra* Parts V.A-G, along with one incident described for the first

time, combine to require a new trial. (Oliver's Cumulative Errors Mot. ¶¶ 1-6.) The new

incident relates to a file belonging to defendant Oliver that eventually was given to a witness for

defendant Seegers. (*Id.* ¶ 6.) The file contained photographs of the witness' murdered son.

Defendant Oliver describes that the witness gave the file to a United States Marshal, who gave

the file to the prosecutor in this case. (*Id.*) When the witness came in for testimony, the

Government was permitted to cross-examine him regarding the contents of the file. Defendant

Oliver asserts that the Court's decision to permit cross-examination on this topic was error, and

that the Court further erred when it allowed the file to be in view of the jurors after the Court had

ordered that it not be disclosed to them. (*Id.*) Defendant Oliver contends that the incidents

relating to the file constitute reversible error because the evidence was inadmissible as irrelevant,

and because the emphasis given it by the Government heavily prejudiced defendant Oliver. (*Id.*

¶¶ 6, 11.)

   The Government maintains that the evidence involving the file was properly admitted. It

was relevant, the Government asserts, as evidence that defendants intended to intimidate the

witness, particularly because defendants were charged with murdering or otherwise intimidating

witnesses. (Govt.'s Omnibus Opp'n 83-84.) As such, it was also relevant insofar as it tended to

show defendant's consciousness of guilt. (*Id.* at 84.) Finally, the Government takes issue with

defendant Oliver's contention that the Government unduly emphasized the evidence. (*Id.* at 84-

86.) Accordingly, the Government argues, the evidence was properly admitted and does not warrant a new trial. As to defendant Oliver's argument that a combination of errors mandates a new trial, the Government contends that, because defendant Oliver has identified no errors, the "cumulative impact of errors" doctrine does not apply. (*Id.* at 86.) In any event, any cumulative impact did not affect a "substantial right" and thus does not justify a new trial. (*Id.* at 87.)

This Court finds Oliver's arguments to be without merit. First, the evidence relating to the file was properly admitted. Whether defendants engaged in witness intimidation is certainly relevant, both to their participation in a conspiracy alleged to have obstructed justice and as evidence of consciousness of guilt. *Cf. Martinez*, 681 F.2d at 1256. Whether the file made its way to the witness by design, and what any such design might have been, was a matter for the jury, and this Court properly allowed it to be presented to them. This Court also finds that the Government's reference to the incident in closing argument was proper. Defendant Oliver's claim that the Government focused extensively on the incident is not supported by the record. Finally, defendant Oliver's contention that the cumulative effect of errors requires a new trial must be rejected because this Court has already rejected defendant Oliver's claims of error. *See United States v. Trujillo,* 136 F.3d 1388, 1398 (10th Cir. 1998) (limiting the cumulative error analysis to the effect of matters determined to be error). Further, even were the incidents found to be error, they would not require a new trial in light of the significant evidence against defendant Oliver. His motion shall be DENIED.

46

VI.   *Defendant Franklin Seegers' Motions*

A.   *Omnibus Motion for Judgment of Acquittal or in the Alternative, Motion for a New Trial and Motion to Adopt Co-Defendants' Motions* [2032]

1.   *Sufficiency of the Evidence*

Defendant Seegers argues that the Government's evidence was insufficient to support convictions on any of the charges against him. (Seegers' Omnibus Mot. 6-11; 14-17.) He maintains that the Government failed to present direct evidence on several of the counts, and argues that some of the Government's ballistics evidence exonerates him of the murder of Diane Luther and the shooting of Lincoln Hunter. (*Id.* at 7-10, 15.) He also argues that there was no evidence to support his participation in the RICO and narcotics conspiracies. (*Id.* at 9-11, 16-17.)

In the Government's view, defendant Seegers' convictions are amply supported by the record. (Govt.'s Omnibus Opp'n 56-60.) It argues that testimony by several witnesses supported defendant Seegers' conviction for the assault of Lincoln Hunter (*id.* at 56-57), that the ballistics evidence and other evidence relating to the gun used in the shooting further supports that conviction (*id.* at 58), and that a wide array of testimonial and physical evidence supports his convictions for participation in the narcotics and RICO conspiracies (*id.* at 59-60).

This Court finds that the evidence supports the jury's verdicts as to defendant Franklin Seegers. Witnesses testified to his role in the shooting of Lincoln Hunter, including the victim himself. (Trial Tr. 10/21/03 p.m. at 83-87; Trial Tr. 11/12/03 p.m. at 15-31; Trial Tr. 11/13/03 a.m. at 111-12, 116.) While defendant Seegers may dispute the credibility of these witnesses (Seegers' Omnibus Mot. 14-15), there is no basis for finding that the jury could not reasonably have believed them. Similarly, the ballistics tests and other physical evidence could reasonably

47

have been interpreted by the jury to support defendant Seegers' conviction for the shooting. The

Government presented testimony explaining how the ammunition evidence found in the victims'

apartment was consistent with its claim that defendant Seegers had committed the shootings.

(Trial Tr. 11/12/03 p.m. at 118-21; Trial Tr. 11/14/03 a.m. at 11-13.) While defendant Seegers

might disagree with the weight or credibility of this evidence (Seegers' Omnibus Mot. 15), this

Court finds that the jury could reasonably have credited it.

Additionally, this Court finds that defendant Seegers' convictions for the narcotics and

RICO conspiracies are also supported by sufficient evidence. Several sources provide support

for these convictions: testimony indicated that Seegers was active, on behalf of the organization,

in the distribution of drugs (Trial Tr. 11/13/03 a.m. at 118-19, 127) and in the enforcement of

discipline (*id.* at 119); physical evidence linked to defendant Seegers supported a finding that he

was involved in drug trafficking (Trial Tr. 11/10/03 p.m. at 111-20); and the evidence of his role

in the shooting discussed above, and of his motive in doing so, also supported his conviction for

participation in the conspiracies. Again, although defendant Seegers quarrels with the credibility

and weight of this evidence (Seegers' Omnibus Mot. 16-17), he provides no reason to deny the

jury's ability to reasonably credit it as sufficient to support his convictions.

Taking all of the evidence into account, this Court finds that there was sufficient evidence

to support defendant Seegers' convictions for his role in the shooting and for his participation in

the RICO and narcotics conspiracies. Accordingly, defendant's motion for judgment of acquittal

or for a new trial based on insufficient evidence shall be DENIED.

### 2.    *Denial of Severance Motions*

Defendant Seegers argues that he is entitled to a new trial because this Court improperly

denied his earlier motions for severance. (Seegers' Omnibus Mot. 17-23.) While he identifies

specific ways in which the joint trial resulted in prejudice to him, his primary argument is that he

was prejudiced from merely being tried with co-defendants charged with an extensive pattern of

heinous activity. (*Id.* at 21.) In comparison to his co-defendants, he argues, his crimes were *de*

*minimis*; as such, the joint trial increased the danger that he would be convicted based on his

association with them. (*Id.*) While he acknowledges that the jury was instructed to limit the

evidence to each defendant, he maintains that it would be "impossible" for the jury to have

adhered to them. (*Id.* at 22.) As proof of their inability to compartmentalize the evidence, he

points to their convictions relating to the shooting of Lincoln Hunter. (*Id.*) Finally, defendant

Seegers maintains that he should have been severed during trial in order to avoid being

substantially prejudiced by the courtroom outbursts and conduct of his co-defendants. (*Id.* at 23-

28.)

The Government takes the position that this Court's denial of defendant Seegers' pre-trial

motion for severance was proper and need not be reconsidered. (Govt.'s Omnibus Opp'n 65-66.)

It maintains that the evidence at trial supported this Court's finding that there was no great

disparity in evidence against defendant Seegers and his co-defendants. (*Id.* at 66.) Additionally,

it disputes his claim that in-trial severance due to the conduct of his co-defendants was necessary

(*id.*), contending that the Court's limiting instructions were sufficient to cure any potential

prejudice (*id.* at 66-67).

This Court finds that its prior determination that severance was not warranted was proper.

Defendant Seegers was not entitled to severance either before or during trial. Based on Federal

Rules of Criminal Procedure 8(b) and 14(a), relevant case law, and the factors common to all

defendants discussed in detail *supra* Part V.G, this Court finds once again that the evidence against defendant Seegers was not so disparate as to make joinder improper or to warrant severance. Defendant Seegers was charged with counts relating to participation in the narcotics and RICO conspiracies that were at the heart of this trial, including murder and attempted murder charges and charges relating to the distribution of narcotics. The allegations and evidence against him was of sufficiently similar quality and duration as to make them commensurate with the charges and evidence against his co-defendants. Accordingly, severance on the basis of disparity was properly denied.

As to defendant Seegers' claim that he is entitled to a new trial because of prejudice resulting from the courtroom antics of his co-defendants, this Court finds no basis for granting such a motion. In the five pages he devotes to this argument, defendant Seegers provides not a single citation to a case supporting his motion. (Seegers' Omnibus Mot. 23-28.) Instead, he recounts the circumstances surrounding his co-defendants' outbursts and concludes that, because their conduct substantially prejudiced him, he is entitled to a new trial. (*Id.*)

As this Court made clear on the record, it disapproved of defendants' inappropriate comments and conduct. It instructed defendants that their sole opportunity to address the jury would be from the witness stand, should they elect to testify on their own behalf, and that extraneous comments during the proceedings were unacceptable. (*E.g.*, Trial Tr. 11/26/03 a.m. at 68-69; Trial Tr. 2/2/04 p.m. 65-66; Trial Tr. 2/9/04 a.m. at 136-38; Trial Tr. 3/29/04 p.m. at 29, 84.) This Court instructed the jury that the evidence against each defendant must be viewed separately (*e.g.*, Trial Tr. 3/30/04 a.m. at 40-41, 65). When necessary, it admonished defendants outside the presence of the jury (Trial Tr. 2/9/04 a.m. at 136-38) and even removed defendant

50

McGill when he refused to comply with this Court's instructions (Trial Tr. 3/29/04 p.m. at 85). This Court finds that its instructions, which the jury is presumed to have followed, *see Edelin*, 118 F. Supp. 2d at 42 ("Jury instructions are presumed to be effective.") (citing *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)), were sufficient to cure any prejudice. *See United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). Moreover, as other courts have pointed out, ordering a new trial solely on this basis would be permitting defendants to force a mistrial and prevent joint trials altogether by engaging in such behavior. *See, e.g., United States v. Delpit*, 94 F.3d 1134, 1143-44 (8th Cir. 1996); *United States v. Bamberger*, 456 F.2d 1119, 1128 (3d Cir. 1972).

### 3. *Admission and Exclusion of Evidence*

Defendant Seegers challenges the Court's decisions relating to the admissibility of evidence. (Seegers' Omnibus Mot. 28-37.) He argues that he was prejudiced by (1) the jury's exposure to extrinsic information (*id.* at 28-29); (2) the Court's ruling denying admission of a statement made by his brother (*id.* at 33-35); and (3) the admission of a 1993 conviction (*id.* at 35-37). The Court shall consider each in turn.

First, he argues that the jury was left with the impression that all of the defendants were extremely dangerous due to the combination of security precautions and their exposure to comments, incidents and media articles that this case was remarkable in size and nature. (*Id.* at 28-29.) Specifically, he objects to defendant Oliver's testimony that the defendants were previously eligible for the death penalty and that the case was the largest in the history of the District of Columbia; the jury's possibly having observed him once in shackles and an inmate's jumpsuit; defendant McGill's exposure of his stun-belt in court; and the media coverage of the trial. (*Id.*) The Government argues that defendant Seegers' claims are speculative and, in light

51

of the Court's instructions to the jury, that he has not shown a right to a new trial. (Govt.'s Omnibus Opp'n 68-69.)

This Court finds that defendant Seegers is not entitled to a new trial based on these incidents. The Court presumes that the jury follows its instructions. *See Edelin*, 118 F. Supp. 2d at 42. The Court instructed the jury to avoid media coverage and not to speculate as to whether defendants were incarcerated during the trial. (*E.g.*, Trial Tr. 10/17/03 a.m. at 86.) Additionally, this Court finds no basis for defendant Seegers' claim that the jury assumed he was wearing a stun belt, simply because they observed defendant McGill's. Absent any reason to suspect that the jury was prejudiced by these events, this Court finds no basis to credit defendant Seegers' claims. *See United States v. Williams-Davis*, 90 F.3d 490, 500-02 (D.C. Cir. 1996) (imposing a threshold requirement that defendants in this posture must show likelihood of prejudice).

As to defendant Oliver's testimony, the jurors in this case were well aware of the seriousness of the charges and the extensiveness of the alleged criminal activity from the indictment itself. Their exposure to testimony that defendants had been eligible for the death penalty and that the trial was the largest in the history of the District of Columbia may have reinforced their perception that the charges were extremely serious. This Court does not find, however, that either comment would have caused the jury to presume guilt or otherwise prejudice defendant Seegers.

Finally, as to his claim that the jury saw defendant Seegers in shackles and an orange jumpsuit, this Court finds that there is insufficient evidence that the incident even occurred. It is not clear that the jurors even saw him, recognized him as a defendant or noted the details of his attire. Moreover, even if the incident did occur, one such incident does not warrant a new trial.

52

A defendant who claims prejudice because the jury viewed him in custody outside the courtroom during routine transport must show actual prejudice. *See, e.g., United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991). Defendant Seegers has made no such showing.

Second, defendant Seegers argues that this Court's denial of his motion to admit a statement made by his brother was error. (Seegers' Omnibus Mot. 33-35.) Defendant Seegers sought to introduce a statement his brother made to a defense investigator in which his brother took responsibility for narcotics kept in the room he shared with defendant Seegers. (*Id.* at 33-34.) Defendant Seegers claims that the statement was admissible to refute the Government's evidence that drugs were found during a search of their room. (*Id.*) This Court's refusal to admit the statement, defendant Seegers contends, caused "irreparable prejudice" to his defense, and entitles him to a new trial. (*Id.* at 35.)

The Government argues that the statement was properly excluded because it failed to meet the requirements imposed by Federal Rule of Evidence 804(b)(3) and relevant case law. (Govt.'s Omnibus Opp'n 63.) Further, the Government maintains, the Court's determination was based on written submissions of the parties and on arguments made at a motions hearing. (*Id.*)

This Court finds that its ruling on defendant Seegers' motion to admit the statement was proper. A statement against penal interest is admissible under Federal Rule of Evidence 804(b)(3) if it meets three requirements, only one of which is at issue here: "there must be corroborating evidence of the statement's trustworthiness." *United States v. McDonald*, 688 F.2d 224, 232 (4th Cir. 1982). This Court found that defendant Seegers had failed to present evidence sufficient to meet this requirement. (Trial Tr. 2/20/04 a.m. at 185.) In the absence of new arguments why its ruling was incorrect, this Court declines to revisit it. Defendant Seegers'

motion for a new trial on this basis, therefore, shall be DENIED.

Third, defendant Seegers argues that it was error for this Court to admit into evidence his 1993 conviction, and subsequently seeks to strike the evidence or declare a mistrial on the basis of the evidence having been improperly admitted. (Seegers' Omnibus Mot. 35-37.) The evidence was inadmissible, defendant Seegers claims, because the Government never demonstrated its purported relevance to defendant Seegers' entry into the conspiracy. (*Id.* at 36-37.) As a result, he asserts that he suffered substantial prejudice and is entitled to a new trial. (*Id.* at 37.) The Government maintains that the evidence of the conviction was relevant to show his willingness to join the conspiracy, because it indicated that he shared the conspiracy's objective to distribute drugs and that he was familiar with an area in which the conspiracy operated. (Govt.'s Omnibus Opp'n 64.) Alternatively, the Government argues, the evidence was admissible under Federal Rule of Evidence 404(b) because it was relevant to his intent, knowledge and motive for possessing the drugs later found at his residence. (*Id.*)

This Court finds that its prior decision to admit the evidence was proper. As this Court found when it granted the Government's motion *in limine*, it was relevant that defendant Seegers was arrested after attempting to sell cocaine to an undercover police officer, while carrying many bags of cocaine base and heroin, in a neighborhood in which the conspiracy operated, and near where Diane Luther was murdered, in the three years before the Government alleged he had entered the conspiracy. It showed that he was already engaged in the same activity as the conspiracy, and that he did so in the same area as the conspiracy. As such, it was probative of his entry into the conspiracy. Accordingly, the evidence of the arrest was relevant and admissible, and defendant Seegers' motion for a new trial on this basis shall be DENIED.

54

### 4.    *Decisions Relating to the Jury*

Defendant Seegers makes two arguments regarding this Court's handling of the jury.

First, he argues, as has defendant Oliver, that it was error for this Court to replace a juror during

deliberations. (Seegers' Omnibus Mot. 40-41.) Defendant Seegers bases his entire argument on

a First Circuit case in which a juror's views had become known to the Court. (*Id.*) As discussed

in its disposition of defendant Oliver's motion, *supra* Part V.B, this Court finds that its dismissal

and substitution of a juror was amply supported by the record and was proper, given that the

juror's views never became known to the Court.

Second, defendant Seegers claims that his requests to remove Juror No. 12 for cause were

improperly denied. (*Id.* at 38-40.) He claims that Juror No. 12 engaged in misconduct by

discussing with other jurors the presence of a visitor in the courtroom gallery (*id.* at 38) and the

incident regarding the transfer of a file to a defense witness (*id.* at 39); and by commenting on

evidence as it was presented in court (*id.*). These factors led defendant Seegers to conclude that

Juror No. 12 was no longer fair and impartial, and to twice move this Court for his removal

during trial, both of which were denied.

The Government maintains that this Court's earlier decisions not to remove the juror,

based on its own observation of Juror No. 12's conduct, were correct. (Govt.'s Omnibus Opp'n

69-70.) In the Government's view, defendant Seegers' claims are unsupported by the record.

(*Id.*) As such, it argues that he is not entitled to a new trial on the basis of juror bias.

This Court finds that it properly denied defendant Seegers' motions to remove Juror No.

12. There is no support for defendant Seegers' claim that the juror was unwilling to consider the

evidence and render an impartial verdict. There is no reason to believe that this jury, which

55

showed itself able and willing to communicate to the Court problems that arose during

deliberations, would not have advised the Court if Juror No. 12 refused to participate in

deliberations. The incidents themselves, combined with this Court's observation of the juror, do

not support a finding that he was biased. Accordingly, defendant Seegers' motion for a new trial

based on the Court's refusal to remove Juror No. 12 shall be DENIED.

### 5. Cumulative Effect of Errors

Defendant Seegers' final argument is that the cumulative effect of trial errors mandates a

new trial. (Seegers' Omnibus Mot. 42-43.) As this Court noted in its discussion of defendant

Oliver's motion on the same grounds, *supra* Part V.H, the cumulative error analysis does not

apply where the Court finds no error. *See Trujillo*, 136 F.3d at 1398. Accordingly, since the

Court has found none of defendant Seegers' claims of error to be valid, it does not find that

cumulative error merits a new trial. Even were this Court to find those decisions to have been in

error, it does not find that their cumulative effect is such that impact a substantial right of

defendant, and accordingly would not mandate a new trial. Defendant Seegers' motion on this

basis shall be DENIED.

### B. Motion to Dismiss Counts Not Decided by Jury and Not Prosecuted by Government as Conceded [2033] and Motion to Treat the Same as Conceded [2264]

Defendant Seegers moves this Court to dismiss with prejudice four counts and one

alleged act of racketeering in light of the jury's failure to reach verdicts for those counts and the

act, and the Government's failure to indicate any intention to retry them. (Seegers' Mot. Dismiss

1-4.) The basis of his motion is that, under the Speedy Trial Act, 18 U.S.C. §§ 3161-3162, the

56

Government was required to notify the defendant and the Court within 70 days of the mistrial if it intended to seek a retrial. (*Id.*) Upon the Government's lack of response to defendant Seegers' motion to dismiss, he filed a motion to treat his earlier motion as conceded pursuant to Local Criminal Rule 47(b).

This Court finds that the counts and act referenced in defendant Seegers' motion, Counts 45-47 and 84, and Racketeering Act 42, shall be dismissed without prejudice.[2] Upon declaration of a mistrial, a retrial must commence within 70 days. 18 U.S.C. § 3161(e). Even in a complex case such as this, for which the Speedy Trial Act provisions may be extended, 18 U.S.C. § 3162(h)(8)(B)(ii), a retrial must commence within a reasonable time. Here, the Government has not opposed defendant Seegers' motion, nor indicated an intention to retry him, in the nearly two years since this Court declared a mistrial. Accordingly, this Court finds that it has conceded the motion. Defendant Seegers' motions to dismiss and to treat his motion as conceded shall be GRANTED as to his request that the counts be dismissed but DENIED as to his request that the dismissal be with prejudice.

VII.    *Defendant Keith McGill's Motion for a New Trial* [2103/206]

Defendant McGill moves for a new trial on the basis of this Court's refusal to allow testimony by his voice identification expert. He argues that the Government's delay in notifying him that he had been identified on several telephone calls intercepted pursuant to a wiretap, and subsequent delay in turning over the recordings, prevented him from timely notifying the Court of his intention to call as a witness a voice identification expert, Dr. Payne. (McGill's Mot. 1-2;

---

[2] It should be noted that this issue will only arise if defendant Seegers' conviction is reversed; and in that event, defendant Seegers has provided the Court with no reason to foreclose the Government from retrying him on all charges.

McGill's Reply 1-2.) He claims that he notified the Court on numerous occasions that he intended to call Dr. Payne, and if the Government continued to object, that he would seek an evidentiary hearing on the admissibility of her testimony. (McGill's Mot. 4.) His first filing regarding Dr. Payne's testimony came on March 15, 2004, when defendant McGill filed a motion *in limine*, requesting that she be allowed to testify and that a hearing be held before denial of the motion. (*Id.* at 4-5.) Upon the Court's denial of the motion based on defendant's failure to provide a written proffer, defendant McGill notes that he filed a more detailed proffer of her testimony in a renewed motion *in limine* filed two days later, which the Court also denied. (McGill's Mot. 6.) Defendant McGill maintains, as he did in his two motions *in limine*, that the testimony of Dr. Payne was admissible under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702. (McGill's Mot. 6-16.) As such, he believes that this Court's refusal to allow Dr. Payne's testimony was error warranting a new trial. (*Id.* at 1, 18.)

The Government presents three arguments in response. First, it argues that defendant's proffer was untimely because of defendant McGill's delay in notifying the Government and the Court of Dr. Payne's proposed testimony and in providing a proffer regarding the same. (Govt.'s Omnibus Opp'n 120-24.) Such a delay, the Government submits, raises the implication that defendant used them to gain a tactical advantage. (*Id.* at 128-29.) Second, the Government disputes the admissibility of Dr. Payne's testimony under *Daubert* and Rule 702, primarily arguing that the scientific basis of her testimony was uncertain. (*Id.* at 130-37.) Third and finally, the Government argues that even were the decision to exclude her testimony error, (a) it was harmless because the evidence contained in the wiretap calls was corroborated and (b) it did

not affect defendant McGill's substantial rights because, notwithstanding the wiretap calls, the

Government presented overwhelming evidence of his guilt. (*Id.* at 137-38.)

This Court finds that its rejection of Dr. Payne's testimony was proper. First, defendant

McGill's failure to make a proffer upon request of this Court itself justified denial of the

testimony. Several days after this Court's request for a proffer, defendant McGill filed a renewed

motion *in limine* containing a proffer, but because it was untimely, the Court was under no

obligation to consider it. Even taking under consideration the merits of the motion, however, it

must fail. Under Federal Rule of Evidence 702, expert testimony may be allowed where it will

assist the jury "to understand the evidence or to determine a fact in issue," and where (1) the

testimony is based on upon sufficient facts or data, (2) the testimony is the product of reliable

principles and methods, and (3) the witness has applied the principles and methods reliably to the

facts of the case." FED. R. EVID. 702.

Defendant McGill was required to prove the admissibility of the testimony by a

preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10. He failed to demonstrate that

the proffered expert's field involves reliable principles and methods, as required by Rule 702.

Neither the expert's report nor either of defendant McGill's motions *in limine* demonstrated that

Dr. Payne's proposed testimony would be based on scientific knowledge, rather than speculation.

As such, this Court found that the principles and methods of her analysis were not shown to be of

a kind that had been or could be reviewed for reliability, by this Court or others. Other courts

have reached the same conclusion regarding the admissibility of voice identification by

spectrography. *See United States v. McDaniel*, 538 F.2d 408, 413 (D.C. Cir. 1976); *see also*

*United States v. Drones*, 218 F.3d 496, 503 (5th Cir. 2000); *United States v. Bahena*, 223 F.3d

797, 809 (8th Cir. 2000). In light of the foregoing, defendant failed to provide a basis for this

Court to permit the testimony under the factors elucidated in *Daubert*. As a result of its finding

that the testimony was inadmissible, this Court was not required to hold a hearing before denying

defendant McGill's motions *in limine*.

It should also be noted that, even were the Court to find that its decision to exclude the

testimony was error, this Court would find it to be harmless. In light of the fact that the jury

heard defendant McGill's voice for several days while he testified, they were able to make their

own comparison, as voice identification is not necessarily an area outside the ken of the average

jury. Additionally, even had the jury determined that the voice was not his, in light of the other

evidence against defendant McGill, they nonetheless reasonably could have returned the same

verdicts. Accordingly, this Court does not find that the decision so influenced the jury that a

substantial right of defendant McGill's was affected. *See* FED. R. CRIM. P. 52(a); *Kotteakos v.*

*United States*, 328 U.S. at 756. His motion for a new trial shall be DENIED.

### III. CONCLUSION

Upon a thorough review of each party's filings, the applicable law and the entire record

herein, this Court has determined that all motions [200, 217, 218, 221, 1857, 1873, 1875, 1987,

1997, 2009, 2014, 2015, 2043, 2046, 2113, 2133, 2168, 2267] to join, adopt or amend or for

leave to late file shall be GRANTED; defendant Simmons' motion [1994] shall be GRANTED

as to his request to adopt co-defendants' motions and DENIED as to his request for a new trial;

defendant Seegers' motion [2032] shall be GRANTED as to his request to adopt co-defendants'

motions and DENIED as to his request for a new trial; defendant Seegers' motion [2033] to

dismiss counts and his motion [2264] to treat his motion to dismiss as conceded shall be

60

GRANTED as to his request that the counts be dismissed and DENIED as to his request that the dismissal be with prejudice; all motions [206, 1678, 1850, 1858, 1870, 1965, 1975, 1983, 1989, 1991, 1995, 2032, 2103] for acquittal or for a new trial shall be DENIED; and defendant Oliver's motion [1946] to vacate or for a hearing shall be DENIED.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, May 2, 2006.