UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>**KEITH B. McGILL**,<br><br>    *Defendant*. | Case No. 1:02-cr-45-1 (RCL) |

## MEMORANDUM OPINION

In 1999, defendant Keith McGill attempted to murder a man he suspected of cooperating with the government in the criminal case against drug kingpin Kevin Gray. Defendant shot the victim twice in the back, leaving him paralyzed for life. After a jury convicted defendant of attempted murder, tampering with an informant, and other crimes related to his involvement in Gray's drug ring, the Court sentenced defendant to an aggregate term of life imprisonment plus ten years.

Nineteen years into that sentence, defendant now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 278. He asks the Court to reduce his sentence to time served based on his medical conditions, the COVID-19 pandemic, and his family circumstances. ECF No. 278-1 at 1. The government opposes defendant's motion. ECF No. 284 at 1. Upon consideration of the parties' filings, the applicable legal standard, and the record herein, the Court will **DENY** defendant's motion.

1

## I. BACKGROUND

### A. The Offenses

From the late 1980s until 2000, Kevin Gray and Rodney Moore ran a prominent drug trafficking business in Washington, D.C. *See* Presentence Investigation Report ("PSR") ¶¶ 24–36.[1] The drug ring distributed significant amounts of powder and crack cocaine throughout many neighborhoods in the city. *Id.* at ¶¶ 24, 31–32. Members of the organization also committed serious acts of violence, including at least twenty-seven murders and several attempted murders. *Id.* at ¶¶ 24, 41–100. Some of those acts of violence were committed to expand and protect the organization's drug trafficking business. *Id.* at ¶ 44. Others were committed to exact revenge on those who harmed members of the organization. *Id.* at ¶ 45. And in the later years of the conspiracy, members of the organization began committing murders for hire. *Id.* at ¶¶ 24, 41.

As a participant in the conspiracy, defendant purchased large quantities of crack cocaine from Kevin Gray and distributed it to buyers in the Washington, D.C. area. *Id.* at ¶ 104. Like many of his co-conspirators, defendant engaged in violence to protect the organization. In late 1999, shortly after Gray's arrest, defendant and another co-conspirator (Frank Howard) saw a man named Charles Shuler walking nearby. *Id.* at ¶ 99. Defendant and Howard discussed the fact that Shuler was rumored to be a witness in the pending criminal case against Gray, and defendant remarked that he wanted to kill Shuler to gain Gray's favor. *Id.* Howard then gave defendant a .380 pistol and drove defendant to the place where they saw Shuler walking. *Id.* at ¶ 100. Defendant exited Howard's car in an alley to trail Shuler on foot. *Id.* When defendant caught up to Shuler, defendant shot him twice. *Id.* at ¶ 105. Afterwards, defendant ran back to Howard's car and told

---

[1] Defendant's PSR was prepared before the entries on the docket for this matter became electronic. Accordingly, by separate order today, the Court directed the Clerk of Court to file the PSR on the docket, subject to the appropriate access restrictions.

2

Howard that he shot Shuler in the head and the back. *Id.* at ¶ 100. Shuler survived the shooting, but one of the bullets severed his spinal cord, leaving him paralyzed. *Id.* at ¶ 105.

### B. Indictment & Trial

In 2000, a grand jury returned a 131-count Superseding Indictment charging sixteen members of Kevin Gray and Rodney Moore's drug ring. PSR ¶¶ 1–2. The Superseding Indictment charged members of the group with conspiring to distribute cocaine and cocaine base, thirty-two counts of first-degree murder, assault with intent to murder, tampering with a witness or informant by killing, and other violent and drug-related crimes. *Id.*

Defendant was not included in this first group. *Id.* at ¶ 1. Instead, he was indicted separately in 2002 for six offenses related to his involvement in the organization. *Id.* at ¶ 13. The grand jury charged defendant with (1) conspiracy to distribute and possession with intent to distribute 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & 846, (2) conspiracy to participate in a racketeer influenced corrupt organization in violation of 18 U.S.C. § 1962(d), (3) assault with intent to murder in violation of D.C. Code §§ 22-503 and 3202, (4) violent crime (attempted murder) in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1), (5) tampering with a witness or informant in violation of 18 U.S.C. § 1512(a)(2)(B), and (6) using a firearm during the commission of a drug trafficking crime or a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* The indictment alleged that the conduct giving rise to the first two counts occurred between 1995 and late 2000. *Id.* And it alleged that the conduct giving rise to Counts 3 through 6 occurred on December 15, 1999. *Id.*

After defendant was indicted, the Court granted the government's motion to join defendant's case with the pending matter against the other sixteen co-conspirators. *Id.* at ¶ 14. The group was divided into two for trial. *See id.* at ¶¶ 3, 16. Defendant joined five of his co-conspirators

3

in the second trial, which began in late 2003. *Id.* at ¶ 16. After an eight-month trial, the jury found defendant guilty of all six crimes charged. *Id.* at ¶¶ 16–18. The Court sentenced defendant to four concurrent terms of life imprisonment for Counts 1, 2, 4, and 5, plus a concurrent term of thirty-years-to-life imprisonment for Count 3. Judgment, ECF No. 231 at 1–2. It also sentenced defendant to ten years' imprisonment for Count 6, which would run consecutive to his aggregate term of life imprisonment for the other counts. *Id.* at 2.

### C. Direct Appeal & Upcoming Resentencing

Defendant and his five co-defendants appealed. *See United States v. McGill*, 815 F.3d 846, 861 (D.C. Cir. 2016) (per curiam). The D.C. Circuit remanded on several grounds, two of which are relevant to defendant. First, the Circuit vacated defendant's concurrent life sentences for Counts 1, 2, 4, and 5 and remanded for resentencing. *Id.* at 909. It did so because the record at sentencing did not indicate whether the Court considered defendant's requests for a departure from the U.S. Sentencing Guidelines. *Id.* at 909–10. The D.C. Circuit also held that the application of a two-level increase to Counts 1, 2, 4, and 5 for possessing a firearm was error. *Id.* at 910–911. And it noted that at the time of defendant's sentencing, the maximum sentences for Counts 4 and 5 were ten and twenty years, respectively. *Id.* at 912. Second, the D.C. Circuit remanded for a determination of whether the improper admission of certain drug-report evidence "affected the jury's findings as to the quantities of drugs involved in the charged conspiracies and, if so, which counts or quantity findings (if any) must be vacated with respect to each [defendant]." *Id.* at 892.

Defendant's resentencing is set to take place before this Court on July 12, 2021. ECF No. 286. At resentencing, and consistent with the D.C. Circuit's ruling, the Court will resentence defendant on Counts 1, 2, 4, and 5. *See McGill*, 815 F.3d at 909. Defendant's sentences for Count 3 (assault with intent to murder) and Count 6 (use of a firearm during the commission of a crime of

4

violence), however, will not change. That is so for two reasons. First, the D.C. Circuit's vacatur of defendant's concurrent life sentences for Counts 1, 2, 4, and 5 had no bearing on defendant's sentences for Counts 3 or 6. *See id.* Second, because Counts 3 and 6 did not involve drugs, the D.C. Circuit's remand for a determination of whether the admission of certain drug-report evidence affected the jury's findings as to the quantities of drugs involved does not implicate Counts 3 and 6. *See id.* at 892. Thus, the sentences originally imposed for Count 3 (thirty-years-to-life imprisonment) and Count 6 (a consecutive term of ten years' imprisonment) will not change at resentencing.[2]

### D. Motion for Compassionate Release

Defendant now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 278. He argues that "extraordinary and compelling reasons" warranting a sentence reduction exist because (1) the prison where he is incarcerated (FCI McKean) has not provided adequate medical care for his serious cardiac condition, (2) he has multiple health conditions and demographic characteristics that place him at a particularly high risk for severe illness or death should he contract COVID-19, and (3) his family needs him to help care for his elderly mother. ECF No. 278-1 at 1. Defendant further argues that the relevant factors set forth in 18 U.S.C. § 3553(a) support a sentence reduction because he has already served nineteen years of his sentence and has made transformative changes to his life during that time. *Id.* at 47–50.

The government opposes defendant's motion. ECF No. 284 at 1. It argues that defendant has neither established "extraordinary and compelling reasons," nor shown that the relevant

---

[2] Defendant apparently believes that he will be resentenced to five years' imprisonment for Count 3. *See* ECF No. 274 at 13 n.1 ("There remain[s] of course, the mandatory 10-year consecutive sentence for Count 6 as well as *a mandatory 5-year sentence applicable under the District of Columbia Code applicable to Count 3.*") (emphasis added). Defendant cites no authority for this proposition, nor does he explain why he believes he ought to be resentenced on Count 3 when the D.C. Circuit's ruling had no bearing on that Count.

5

§ 3553(a) factors support a sentence reduction to time served. *Id.* The government also represents that defendant was offered the COVID-19 vaccine but refused to receive it. *Id.*

Defendant did not timely reply. *See* LCrR 47(d). His motion is now ripe for consideration.

## II. LEGAL STANDARD

A defendant seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016). To be eligible for a reduction, three requirements must be met. First, the defendant must have exhausted his administrative remedies. 18 U.S.C. § 3581(c)(1)(A). This requires a showing that "defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or that 30 days have elapsed since "the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.*

Second, the defendant must show that "extraordinary and compelling reasons warrant" a reduction of his original sentence. *Id.* In its policy statement on sentence reductions under § 3582(c)(1)(A), the Sentencing Commission enumerated four circumstances that rise to the level of "extraordinary and compelling." *See* § 3582(c)(1)(A) (requiring that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission"); U.S.S.G. § 1B1.13 (Sentencing Commission's policy statement on sentence reductions under § 3582(c)(1)(A)). Those include circumstances involving the defendant's health, age, family, and "other reasons" as "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(A)–(D). Relevant here, an inmate's health condition presents an "extraordinary and compelling" reason when:

>The defendant is—
>>(I) suffering from a serious physical or medical condition,
>>
>>(II) suffering from a serious functional or cognitive impairment, or
>>
>>(III) experiencing deteriorating physical and mental health because of the aging process,
>
>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

§ 1B1.13 cmt. n.1(A)(i)–(ii).

Third, the defendant must show that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13; *see* § 3582(c)(1)(A). Section 3142(g), in turn, requires courts to consider the following factors when "determining whether there are conditions of release that will reasonably assure . . . the safety of any other person and the community": (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of Section 1951, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device," (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, including character, physical and mental condition, family ties, employment, past conduct, and criminal history, among others, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

If the Court finds that the defendant has met his burden of showing these three requirements, the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)," after considering the relevant factors set forth in 18 U.S.C. § 3553(a). Here, those factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need for the sentence imposed to

reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct, (3) "to protect the public from further crimes of the defendant," and (4) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(1)–(2).

### III. DISCUSSION

#### A. Defendant Has Exhausted His Administrative Remedies

As a threshold matter, the Court finds that defendant has exhausted his administrative remedies. On July 20, 2020, defendant wrote to the warden of his facility asking for a sentence reduction based on his "debilitated medical conditions." ECF No. 278-2 at 2. Three days later, the warden denied the request. *Id.* Though defendant did not appeal the warden's denial (as the letter said he could), thirty days have elapsed since the warden's receipt of defendant's request. Accordingly, defendant's motion is properly before the Court. *See* 18 U.S.C. § 3582(c)(1)(A) (providing that a defendant may move for a sentence reduction "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*") (emphases added).

#### B. The Relevant § 3553(a) Factors Do Not Support a Sentence Reduction

To prevail on his motion for compassionate release, defendant must show that there are "extraordinary and compelling reasons" justifying relief, that his release would not pose a danger to any other person or to the public, and that the relevant factors set forth in 18 U.S.C. § 3553(a) support a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. The second requirement—that his release would not pose a danger to the public—overlaps with the third, as

one of the § 3553(a) factors requires the Court to consider whether the sentence imposed will "protect the public from further crimes of the defendant." § 3553(a)(2)(C).

Though the parties dispute whether defendant's health conditions and family circumstances amount to extraordinary and compelling reasons warranting a sentence reduction, the Court need not resolve that issue. *See* ECF No. 278-1 at 9–46; ECF No. 278 at 13–24. For even if there *were* extraordinary reasons justifying defendant's early release, the Court would nevertheless deny his motion, because it finds that the relevant § 3553(a) factors do not support a sentence reduction to time served.

Before explaining why the relevant § 3553(a) factors do not support a sentence reduction to time served (nineteen years), the Court must first address the impact of the D.C. Circuit's ruling on defendant's sentence. As noted above, the D.C. Circuit vacated defendant's concurrent life sentences for Counts 1, 2, 4, and 5 and remanded for resentencing. *See McGill*, 815 F.3d at 908–913. Defendant's resentencing is scheduled to take place on July 12, 2021. ECF No. 286. Because the Court has not yet resentenced defendant, the Court is faced with the unusual task of deciding whether a sentence reduction to nineteen years' imprisonment would be appropriate under the § 3553(a) factors *before* determining what defendant's overall sentence will be.

Yet because defendant's sentences for Counts 3 and 6 will not change at resentencing, the Court can be certain that defendant will face, *at minimum*, forty years' imprisonment. *See* Judgment 3 (sentencing defendant to thirty-years-to-life imprisonment on Count 3 and a consecutive term of ten years' imprisonment on Count 6). At most, defendant faces life plus ten years. *See id.* As of today, defendant has served approximately nineteen years in prison. *See* ECF Min. Entry 1/3/02 (noting defendant's arrest on Jan. 3, 2002). Thus, the Court must ask whether a

9

reduction from forty-years-to-life imprisonment to nineteen years' imprisonment is appropriate in light of the relevant § 3553(a) factors. The Court finds that it is not.

### 1. The Nature and Circumstances of Defendant's Offenses

First, the nature and circumstances of defendant's crimes weigh strongly against a sentence reduction. *See* 18 U.S.C. § 3553(a)(1). For approximately five years, defendant distributed a significant amount of crack cocaine as a member of a brutally violent drug ring. *See* PSR ¶¶ 13, 18, 39–40, 41. On its own, defendant's drug dealing is a serious crime that took a toll on many in the Washington, D.C. area. Making matters even worse, defendant attempted to murder a person he suspected of cooperating with the government in the criminal prosecution against one of the drug ring's leaders, Kevin Gray. *Id.* at ¶¶ 99–100. Regardless of motive, attempted murder is a heinous crime. Here, however, the circumstances surrounding the attempted murder add to its severity. Not only did defendant try to take a life, but he did so to obstruct justice and further a criminal organization that profited him through his drug dealing. The seriousness of this conduct weighs heavily against a sentence reduction.

### 2. Defendant's History and Characteristics

On balance, defendant's history and characteristics also weigh against a sentence reduction. Though defendant has made productive use of his time in prison and has incurred only three minor infractions in nineteen years, his violent criminal history before prison suggests that a sentence reduction would be inappropriate.

Beginning with the positives, defendant's track record in prison weighs in his favor. Since his incarceration, defendant has made productive use of his time. In 2008, defendant earned a High School Equivalency Diploma. ECF No. 278-2 at 11. He has also completed a significant number of vocational courses, including the Commercial Truck Training and Hazardous Materials

Training offered by the College of Southern Maryland. *Id.* at 18, 23–25. And defendant has taken courses in parenting, creating writing, criminal psychology, and history. *Id.* at 9–10, 14–18.

His disciplinary record in prison paints a positive picture too. Defendant has only incurred three disciplinary infractions in the past nineteen years. *Id.* at 8. In March 2011, he was cited for "interfering [with] staff" when he told a staff member that he could protect her. *Id.* Defendant denies the incident. *Id.* In June 2011, defendant was cited for "failing to follow safety [regulations]" when he put food under his cell door. *Id.* Defendant denies this incident as well. *Id.* And in 2017, defendant was cited for "possessing stolen property" when he admitted to having an iron in his cell. *Id.* Though defendant's record is not spotless, the Court finds that having only three relatively minor infractions in nineteen years weighs in defendant's favor.

Turning to the negatives, defendant's history of violence even before joining Kevin Gray's drug-trafficking business strongly weighs against a sentence reduction. By the time defendant joined Gray's criminal organization, he had been convicted of multiple violent crimes. At age 20, defendant was convicted of assault with intent to rob and use of a handgun in commission of a felony. PSR ¶ 133. The convictions arose after defendant, along with two accomplices, approached a man in a parking lot and forced him into his apartment building at gunpoint. *Id.* There, they took $260 from the man's pocket and forced him inside his apartment unit to demand further payment. *Id.* When the man refused, he was forced to the floor and threatened with death. *Id.* Officers responded to the scene and arrested defendant. *Id.*

Two months later, defendant was convicted of robbery with a deadly weapon and theft. *Id.* at ¶ 134. This time, defendant and two accomplices approached a man as he was entering his apartment building, displayed handguns, and forced the victim inside his apartment unit. *Id.* Once inside, defendant and the accomplices tied the man up and demanded money and drugs from him.

*Id.* They then ransacked the man's apartment, taking more than $27,000 worth of jewelry. *Id.* Defendant and the accomplices also took the man's car keys, and they fled from the scene in his car. *Id.* While fleeing, they ran over a police officer who was responding to the scene of the crime. *Id.* The officer sustained injuries to his chest and leg. *Id.*

On a third occasion, defendant was convicted of using a handgun in the commission of a crime of violence. *Id.* at ¶ 135. This criminal history shows that defendant was no stranger to the law by the time he joined Kevin Gray's drug-trafficking business. His history of violence weighs against an early release.

Finally, defendant's education and employment history does not move the needle either way. Defendant claims to have graduated high school in 1985 or 1986, but representatives from the high school were unable to confirm his attendance. *Id.* at ¶ 177. Transcripts from Johnson Junior High School, however, confirm that defendant was enrolled in the Ninth Grade in 1986, where he primarily earned below-average grades. *Id.* Since then, defendant has held a variety of jobs. *Id.* at ¶¶ 178–84. From 1996 until his arrest in 2002, defendant was self-employed at a company called "Black Face Vending," where he operated an ice cream truck in Southeast, D.C. *Id.* at ¶ 179. For five months in 2001, defendant also worked as a contract employee for Giant Foods Warehouse in Maryland, where he was paid "off the books" by a Giant subcontractor. *Id.* at ¶ 180. He has also worked as a driver for two companies. The first fired him after approximately one week on the job due to a "preventable accident." *Id.* at ¶ 182. The second fired him for "failure to return to the job." *Id.* at ¶ 181. Before that, defendant worked at Wendy's. *Id.* at ¶ 183. Aside from his employment as a contractor for Giant, where he admitted to being paid "off the books," the Court finds that defendant's educational and employment history do not weigh in favor or against a sentence reduction. *Id.* at ¶ 180.

On balance, then, defendant's history and characteristics weigh against his early release. Though the Court acknowledges defendant's efforts at rehabilitation in prison, it finds that his long history of violence ultimately tips this factor against him.

### 3. *The Need for the Sentence Imposed to Reflect the Seriousness of the Offenses, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence*

Next, the need for the sentence imposed to reflect the seriousness of defendant's offenses, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct weighs strongly against a sentence reduction. *See* 18 U.S.C. § 3553(a)(2)(A)–(B). As explained above, defendant stands to serve, at minimum, forty years in prison. *See* Judgment 3. At most, defendant could serve life. *See id.* Given the severity of defendant's crimes and his violent criminal history, reducing his sentence to nineteen years' imprisonment would be a windfall.

Nor would such a drastic reduction in sentence afford adequate deterrence or promote respect for the law. Allowing defendant to walk free after serving less than half of his aggregate sentence would send a message to defendant—and others who consider walking down the same path—that dealing significant amounts of crack cocaine and attempting to murder a government cooperator to protect that dealing will be punished leniently.

### 4. *The Need to Protect the Public from Further Crimes of Defendant*

The need to protect the public from further crimes committed by defendant also weighs against a sentence reduction. *See* 18 U.S.C. § 3553(a)(2)(C). Defendant began committing violent crimes at age 20. *See* PSR ¶¶ 133–34. He held victims at gunpoint, robbed them, tied them up, and forced them to pay him money. *Id.* From that point on, his willingness to commit violent acts only intensified. When defendant heard rumors that Charles Shuler was cooperating with the government in Kevin Gray's criminal case, he decided he wanted to kill Shuler to gain Gray's

favor. *Id.* at ¶ 99. Defendant got a gun, followed Shuler on foot, and shot him twice in the back. *Id.* at ¶ 100. This incident, and defendant's conduct leading up to it, shows defendant's willingness to commit heinous acts of violence against strangers and known targets alike. Given his past actions, the Court finds that defendant would pose a danger to the public if released.

In his brief, defendant emphasizes that the Court must consider defendant's *current* dangerousness, not the danger he posed at the time of his arrest in 2002. ECF No. 287-1 at 48. And since his arrest, defendant argues, his behavior indicates that he no longer poses a danger to the public. First, based on his record in prison, defendant's security level has been downgraded from high security to medium security. *Id.* at 47–48. And on September 2, 2020, the Bureau of Prisons evaluated his recidivism level as "low risk." *Id.* at 48. Finally, defendant argues, he has incurred only three minor incidents in prison in the past nineteen years. *Id.* at 49.

The fact that defendant has not incurred any violent infractions in prison does not persuade the Court that defendant is no longer a violent person. Indeed, the types of violent crimes defendant has committed—ones intended to steal property and obstruct justice—are far more difficult to commit while in prison. Moreover, defendant's refusal to accept responsibility for the instant offenses until *after* he was convicted further suggests that defendant may engage in criminal conduct again. *See* PSR ¶¶ 109–10. So while defendant may have cleaned up his act in prison, the Court finds his past criminal conduct highly probative of the type of conduct he would engage in should he be released today. This factor thus weighs against a sentence reduction.

> 5. *The Need to Provide Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner*

Defendant does not argue that a sentence reduction is appropriate in light of some needed educational or vocational training, or any other correctional treatment. *See generally* ECF No. 278-1. The Court does, however, recognize that the need to provide defendant with medical care weighs

14

in favor of a sentence reduction. *See* 18 U.S.C. § 3553(a)(D). Defendant's medical records indicate that he urgently needs mitral-valve-repair surgery. ECF No. 278-1 at 13. Due to travel restrictions caused by the COVID-19 pandemic, however, defendant has not yet been referred for surgery. *Id.* at 10. And though a request had been made to transfer defendant to a facility with a higher care level, he was informed on April 29, 2020 that the transfer would have to wait because of the pandemic. *Id.* at 14. Given that defendant has been unable to undergo surgery while incarcerated, the Court finds that this factor weighs in favor of his release.

Nevertheless, as the other four factors weigh against defendant's release, this factor alone cannot tip the scales in defendant's favor. The Court thus finds that the relevant § 3553(a) factors do not support a sentence reduction to time served. And because compassionate release is appropriate only when the relevant § 3553(a) factors support a sentence reduction, the Court will deny defendant's motion. *See* 18 U.S.C. § 3582(c)(1)(A).

## IV. CONCLUSION

For the reasons explained above, defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 278, will be **DENIED**. A separate Order consistent with this Memorandum Opinion shall follow.

Date: March 22, 2021

_Royce C. Lamberth_
Hon. Royce C. Lamberth
United States District Judge